IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RODERICK TRICE, | ) | |
| | ) | |
| Plaintiff, | ) | 08 C 2387 |
| | ) | |
| v. | ) | |
| | ) | Judge Lefkow |
| TISDALE, et al., | ) | |
| | ) | Magistrate Judge Schenkier |
| Defendants. | ) | |

**DEFENDANT CITY OF CHICAGO'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant, City of Chicago (the "City"), by one of its attorneys, Helen C. Gibbons,

Assistant Corporation Counsel, moves this Court under Rule 12(b)(6) for an order dismissing

plaintiff's complaint for failure to state a claim upon which relief can be granted, or in the

alternative, for an order requiring a more definite statement pursuant to Rule 12(e) of the Federal

Rules of Civil Procedure. Additionally, the City requests that this honorable Court stay the City's

answer to the complaint, discovery, and responses to requests to admit until after a ruling on this

motion.  In support of this motion, the City states as follows:

**INTRODUCTION**

1.     On April 26, 2008 plaintiff filed a twelve-count complaint against Defendants the

City, unknown police officers, as well as Milton Reed, Eastlake Management Group, Inc., and

Security Guard Tisdale (*See* Complaint, attached hereto as Exhibit "Exh." A).  Plaintiff's

complaint includes the following counts: Count I -§ 1983 False Arrest; Count II State Law -

False Arrest; Count III - State Law - Malicious Prosecution; Count IV -§1983 Conspiracy; Count

V - State Law Conspiracy; Count VI § 1983 Equal Protection; Count VII - § 1983 Equal

Protection Class of One; Count VIII - § 1983 *Monell*; Count IX - State Law - 745 ILCS 10/9-102;

Count X - State Law - *Respondeat Superior* against the City; Count XI - State Law - *Respondeat*

*Superior* against Eastlake Management Group, Inc.; Count XII - Injunctive Relief and/or

Extraordinary Relief against Eastlake Management Group, Inc., Security Guard Tisdale, and

Milton Reed.

      2.     Although plaintiff's complaint is 14 pages long and contains 66 paragraphs, it

fails to state a claim for any of these alleged constitutional or state law violations. Plaintiff's

complaint should be dismissed in its entirety. Moreover, plaintiffs *Monell* claim (Count VIII) is

inadequate and likewise should be dismissed, as complaints nearly identical to plaintiff's have

been dismissed in this Court. *See Moumji v. City of Chicago, et al.,* No. 07 C 5256, Slip op. at 7

(N.D. Ill June 9, 2008)(Lefkow, J.) (Attached hereto as Exh. B). An equal protection, class-of-

one claim (Count VII), is legally improper as applied to a discretionary act of a police officer and

should be dismissed. In the alternative, because plaintiff's complaint is vague and deficient as to

even the most fundamental allegations, Defendant City cannot reasonably be required to frame a

responsive pleading without a more definite statement on the part of plaintiff. *See Crawford-El*

*v. Britton*, 523 U.S. 574, 598 (1998).

## LEGAL STANDARDS

      3.     A motion to dismiss pursuant to Federal Rule 12(b)(6) should be granted if the

challenged pleading fails to state a claim upon which relief can be granted. *Corcoran v. Chicago*

*Park District*, 875 F.2d 609, 611 (7th Cir. 1989). Such a motion tests the sufficiency of the

complaint, not the merits of the suit. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir.

1990). Although when considering a motion to dismiss a court accepts as true all the well-

pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom (*see Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005)), a court is not obligated to accept a complaint that merely raises the possibility of relief. *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). In addition, a court should not strain to find inferences not plainly apparent from the face of the complaint. *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984). Rather, to survive a 12(b)(6) motion to dismiss, the complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief" (*see* Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice" of what the "claim is and the grounds upon which it rests. " *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007) (*quoting Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99 (1957)). *See also Kyle v. Morton High School*, 144 F.3d 448 (7th Cir. 1998) (*citing Leatherman v. Tarrant County Narcotics*, 507 U.S. 163, 168, 113 S. Ct. 1160, 1163 (1993)).

4.      Further, the factual allegations must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *Concentra Health*, 496 F.3d at 776 (*quoting Bell Atlantic*, 127 S. Ct. at 1965, 1973 n. 14)). With regard to Section 1983 claims, a complaint must set forth sufficient allegations to place the court and the defendants on notice of the gravamen of the complaint. *McCormick v. City of Chicago*, 230 F.3d 319, 323-24 (7th Cir. 2000).

5.      In this case, plaintiff's complaint sheds no light on his claims against Defendant City. Rather than putting Defendant City on notice of the claims against it, the complaint merely alleges the City should be held liable (1) due to a practice of general "lawlessness" at the Chicago Police Department, or (2) vicariously through some vague police officer misconduct.

## ARGUMENT

### I. PLAINTIFF'S COMPLAINT FAILS TO GIVE NOTICE OF THE CONDUCT THAT FORMS A BASIS FOR HIS CLAIMS

6.     The only "facts" pertaining to the alleged misconduct against plaintiff are contained in paragraphs 7-16 of the complaint.  Paragraphs 17-23 vaguely claim conspiracy, Equal Protection, and *Monell* allegations, which are then reiterated in Counts II, IV, V, VI, VII and VIII.  In those paragraphs, plaintiff claims that, "on or about" November 2, 2007, police officers violated his constitutional rights by conspiring to arrest plaintiff and arresting him (*See* Exh. A ¶¶ 7 -16.) Notably, plaintiff does not include the location of arrest, identify the time of his encounter with the police, explain what happened, describe the force used other than to suggest it was unreasonable, provide the number of officers involved, or offer any details regarding any other allegedly unlawful "acts or omissions" of the "Defendant Officers."  Plaintiff also does not identify the "Defendant Officers" who allegedly engaged in these acts or omissions.  (*Id.*)  At most, plaintiff merely alleges that "upon information and belief" unknown Chicago Police officers came into physical contact with plaintiff on November 2, 2007.

7.     The remaining paragraphs of the complaint fail to provide any additional insight into the alleged misconduct that forms the basis for plaintiff's claims.  Instead, plaintiff asserts generalized, boilerplate language that unidentified unknown officers engaged in a conspiracy and charged him with certain crimes of which he claims he was found innocent.  Who charged plaintiff with committing what crime at what location remains a mystery, as does the type of physical contact or use of force that plaintiff alleges was excessive.

8.      Rule 8(a)(2) requires that a complaint contain a minimal level of factual detail so that the defendant has fair notice as to the claims against it and is given a "reasonable opportunity" to form an answer.  *Pratt v. Tarr*, 464 F.3d 720, 732 (7th Cir. 2006).  Indeed, a defendant must receive sufficient detail to "begin to prepare [its] defense."  *Id*. at 733.  In addition, a complaint "should contain information that one *can* provide and that is clearly important."  *Concentra Health*, 496 F.3d at 780 (emphasis in original).

9.      In this case, the location of plaintiff's encounter with the police, as well as the time, the number of officers he encountered, what happened, and which unknown officer did what should be known to plaintiff.  Plaintiff, however, did not include any of this basic information in his complaint.  As plaintiff's complaint currently stands, there is no meaningful way Defendant City can answer it.  Defendant cannot even determine if the officers had contact with plaintiff because it has no information about the district where the alleged misconduct occurred or the time of that misconduct.  Knowing the number of police officers who allegedly participated in the misconduct is also significant so that the City can evaluate the scope and extent of plaintiff's claims.  Defendant City is unable to mount any meaningful investigation into plaintiff's claims, much less begin to prepare its defense.  Since plaintiff's complaint fails to provide "some quantum of information" about his claims, it should be dismissed.  *See Concentra Health*, 496 F.3d at 779 n.3; *see also Bell Atlantic*, 127 S. Ct. at 1965; *Pratt*, 464 F.3d at 733.

## II.      PLAINTIFF HAS NOT ADEQUATELY PLEADED A *MONELL* CLAIM

10.      Even if the complaint were allowed to stand, plaintiff's *Monell* claims should be dismissed.  In essence, plaintiff claims he was subjected to an illegal arrest, possibly on or around November 2, 2007.  The law requires litigants to "identify the offending municipal policy with

precision" so courts can prevent trials from straying off into "collateral accusations of marginally related incidents." *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999); *see also Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382, 1388 (1997). Contrary to these strict pleading requirements, plaintiff's policy and practice claim is based upon a myriad of general misconduct. If these "unfocused" allegations remain a part of the complaint, this litigation likely will devolve into collateral accusations of marginally related incidents resulting in a squandering of scarce judicial and municipal time and resources. *See Carter*, 164 F.3d at 218. Accordingly, Defendant City respectfully asks this Court to dismiss the *Monell* policy and practice allegations of plaintiff's complaint.

11.     Plaintiff's complaint appears to suggest the interaction between plaintiff and the police occurred November 2, 2007. As noted above, the complaint is woefully deficient of allegations that describe the underlying incident alleged by plaintiff. In contrast, the overwhelming majority of plaintiff's complaint involves merely generalized allegations of misconduct. These allegations do not establish a specific policy for the purposes of stating a viable *Monell* claim, rather they appear to be a generalized list of possible problems any police or para-military organization might encounter. Specifically, plaintiff has failed to allege the required causal link between these allegations (and corresponding policies/practices) and the purported violation of his rights so as to state a claim for municipal liability.

12.     To prevail on a Section 1983 claim against the City a plaintiff must show: (1) a violation of his constitutional rights; (2) an injury; and (3) that the injury and violation of rights was directly caused by the City's own action or inaction that carried the requisite degree of fault. *Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 117 S. Ct.

1382 (1997) ("*Bryan County*").  In addition, a plaintiff must show that the constitutional

violation was directly caused by a "custom, policy or practice" of the defendant municipality.

*Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S. Ct. 2018 (1978).  As the

Supreme Court stated in *Bryan County*, "[t]he plaintiff must also demonstrate that, through its

*deliberate* conduct, the municipality was the 'moving force' behind the injury alleged.  That is, a

plaintiff must show that the municipal action was taken with the requisite degree of culpability

and must demonstrate a direct causal link between the municipal action and the deprivation of

federal rights."  520 U.S. at 404, 117 S. Ct. at 1388.

13.     In this case, plaintiff's attempt to plead a *Monell* claim fails because he has not

adequately alleged that his constitutional rights were violated as a result of a "custom, policy, or

practice" of the City.  In fact, plaintiff fails to adequately define the "custom, policy, or practice"

that allegedly led to the violation of his constitutional rights.  Plaintiff has instead filled his

complaint with miscellaneous and unrelated allegations of misconduct against the Chicago Police

Department without sufficient explanation or specificity.  (See Exhibit A, ¶¶7 - 24)  Stating a

valid *Monell* claim, however, requires more than merely listing instances of misconduct and from

that alleging the existence of an "abstract [policy] of violating citizens' constitutional rights."

*Carter v. Morris*, 164 F.3d 215, 218 ) (4th Cir. 1999).

14.     When alleging a *Monell* claim, a plaintiff must identify with specificity the custom,

policy, or practice of which he complains.  *See, e.g., City of Canton v. Harris,* 489 U.S. 378, 391

(1989) (the identified deficiency must be "closely related to the ultimate injury").  To forego this

requirement would blur the line "between *respondeat superior* liability and truly unconstitutional

municipal conduct.'  *Piotrowski v. City of Houston*, 237 F.3d 567, 580 n.27 (5th Cir. 2001).

-7-

Accordingly, to ensure that a municipality is not held liable solely for the actions of its

employees, "rigorous standards of culpability and causation must be applied." *Bryan County*,

520 U.S. at 405.  As the Fourth Circuit explained in *Carter*:

> [B]y requiring litigants to identify the offending municipal policy with precision,
> courts can prevent trials from straying off into collateral accusations of marginally
> related incidents.  Section 1983 does not grant courts a roving commission to root out
> and correct whatever municipal transgressions they might discover – our role is to
> decide concrete cases.  Unfocused evidence of unrelated constitutional violations is
> simply not relevant to the question of whether a municipal decision maker caused the
> violation of the specific federal rights of the plaintiff before the court.  Permitting
> plaintiffs to splatter-paint a picture of scattered violations also squanders scarce
> judicial and municipal time and resources.  As a practical matter, a case involving
> inquiries into loosely related incidents can be an unruly one to try.

*Carter*, 164 F.3d at 218-19.  *See also Brown v. City of Chicago*, 2001 WL 1002484 at *3 (N.D.

Ill. 1997) (Marovich, J.) ("[c]laims based wholly on conclusory allegations of *de facto* municipal

policy constitute one of the most prevalent forms of abuse in §1983 actions") (Attached hereto as

Exh. C).

15.    In this case, plaintiff's reliance on generalized and vague policy claims of

misconduct against the City as basis for his *Monell* claims is exactly the type of "splatter-paint"

approach rejected by *Carter*.  Plaintiff's *Monell* allegations begin at paragraph 22, which is

divided into sub-paragraphs (a)-(o).  These sub-paragraphs do nothing more than refer to an

"abstract" policy of violating constitutional rights.[1]  *See Carter*, 164 F. 3d at 218.

---

[1]Defendant notes that these sub-paragraphs are also repetitive and overlap with each other.  For example, sub-paragraphs (c), (e), (f), (g), (h), (I), (k), (l) and (n) allege the same thing: the City failed to take remedial action, sanction, or discipline officers who commit certain misconduct.  Similarly, sub-paragraphs (d), (j), and (m) all concern the City's alleged failure to investigate misconduct.  Plaintiff has essentially repeated the same boilerplate allegations 15 times, but not once has he offered precise details or the specificity required to identify a custom, practice, or policy that caused his constitutional deprivation.

Plaintiff's sub-paragraphs do not offer any specifics that would serve to put the City on notice of the policy, practice or custom that he is challenging. *See Bell Atlantic Corp.*, 127 S. Ct. 1955, 1969 (2007) (complaint must provide the "grounds upon which [his claim] rests"). Cursory allegations of general duties and the failure to perform those duties do not "stand in the place of an allegation of a municipal policy, custom or practice required to state a *Monell* claim under § 1983." *Catchings v. City of Chicago*, 2005 WL 1027127 at *4 (N.D. Ill. 2005) (Gettleman, J.) (Attached hereto as Exh.D); *see also Mumm v. Wetter*, 2006 WL 163151 at *4 (N.D. Ill. 2006) (St. Eve, J.) (Attached hereto as Exh. E) (boilerplate allegations of a municipal policy, entirely lacking in any factual support that a policy does exist, are insufficient); *Brown v. City of Chicago*, 2001 WL 1002484 at *3 (N.D. Ill. 2001) (Marovich, J.) (Exh. C) (dismissing section 1983 claims and explaining that boilerplate allegations constituted of mere legal conclusions that did not state *Monell* claim).

16.    Plaintiff's attorney has included nearly identical boilerplate *Monell* allegations in at least eight other recently filed cases in this courthouse: *Terry Martin v. City of Chicago, et al.*, No. 07 C 4991 (Guzman, J.); *Michael Farley v. City of Chicago, et al.*, No. 07 C 5254 (Gottschall, J. ); *Sarkis Moumji v. City of Chicago, et al.,* No. 07 C 5256 (Lefkow, J.); *Safford v. City of Chicago, et al.*, No. 07 C 5276 (Coar, J.); *Jerry Chapparro v. City of Chicago, et al.*, No. 07 C 5277 (Conlon, J.); *Terrance Jones v. City of Chicago, et al.*, 07 C 5279 (Norgle, J.); *McComb v. City of Chicago, et al.,* No. 07 C 5564 (Marovich, J.); *Michael Johnson v. City of Chicago, et al.*, 08 C 2629 (Holderman, J.) (*Johnson* Complaint attached hereto as Exh. F). Like this case, none of these other cases relate to the *Monell* topics alleged; rather, plaintiff's attorney seeks to advance a general lawlessness theory in all of them which fails to properly establish a

-9-

*Monell* claim as recognized by this Court. *See Moumji v. City of Chicago, et al.,* No. 07 C 5256,

Slip op. at 7 (N.D. Ill June 9, 2008)(Lefkow, J.) ( Exh. C).   This "one size fits all" approach to

*Monell* taken by plaintiff's counsel further establishes the absence of the required specificity

(*City of Canton, supra*), and implicates the potential for abuse forewarned in *Carter* and

*Copeland* Courts, as well.

17.     Case law is clear that allegations of other misconduct not connected to a

plaintiff's alleged deprivation do not state a claim for municipal liability. *See City of Canton v.*

*Harris*, 489 U.S. 378, 388 (1989) (plaintiff required to demonstrate the existence of a direct

causal link between municipal policy and constitutional injury).   As explained in *Carter*, the

claim that "past generalized bad police behavior led to future generalized bad police behavior, of

which [the plaintiff's] deprivations are an example" fails the "rigorous standards of culpability

and causation" required for municipal liability.  *Carter*, 164 F.3d at 219.  Instead, a plaintiff must

allege an affirmative link between the deficiency and the particular violations of which he

complains. *Canton*, 489 U.S. at 388.  More specifically, a plaintiff must allege the requisite

causation in that the policy or custom was the 'moving force' behind the constitutional

deprivation. *O'Sullivan v. City of Chicago*, 327 F. Supp. 2d 937, 940 (N.D. Ill. 2004).

18.     Here, plaintiff has not alleged a causal link between any "policies" alleged in

paragraphs 22-24 and 47-50 to the contrary, plaintiff takes a scattershot approach in these

paragraphs with respect to his *Monell* claim.  It is impossible to tell if the unfocused evidence of

unrelated misconduct described in these allegations actually relates to any alleged conduct that

forms the basis of plaintiff's complaint.   As such, the alleged policies associated with this

misconduct do not aid plaintiff in his attempt to allege a *Monell* claim.  *See Carter,* 164 F.3d at

218 (requiring "close fit" between challenged policy and constitutional violation").  Simply stated, plaintiff has not alleged facts from which this Court could infer that any policies alleged to exist in paragraphs 22-24 and 47-50 were the "moving force" behind some constitutional injury, if any, that can be gleaned from the complaint.  *Bryan County,* 520 U.S. at 397, 117 S. Ct. at 1385 .

19.    The preceding discussion of paragraphs 7-24 and 47-50 demonstrates plaintiff's complaint is replete with allegations that have nothing to do with his arrest or the allegations of misconduct against the "unknown" Police Officer Defendants in this case.  Although plaintiff's complaint contains a myriad of allegations concerning unrelated instances of misconduct and the existence of unconstitutional policies, it is devoid of any misconduct and the existence of unconstitutional policies, it is devoid of any facts linking his alleged constitutional deprivation to these other policies.  Count VIII therefore should be dismissed.  Plaintiff has merely provided boilerplate allegations of previous instances of misconduct.  A *Monell* claim is not adequately pled by including references to every "municipal transgression" that has occurred and the language "custom, policy, or practice." *See Carter*, 164 F.3d at 218-19; *Catching v. City of Chicago*, 2005 WL 1027127 at *4 (N.D. Ill. 2005) (Gettleman, J.) (Exh. C) (declining to infer the existence of a policy without factual allegations supporting that theory).  Therefore, plaintiff's failure to plead any facts linking his constitutional injury to these alleged policies if fatal, and his *Monell* claims (Count VIII) should be dismissed. *See, e.g., Benson v. Cady*, 761 F.2d 335, 339 (7th Cir. 1985) (a plaintiff needs to demonstrate a causal link between the defendant's conduct and his injury).

### III.    PLAINTIFF'S EQUAL PROTECTION - CLASS OF ONE CLAIM IS INSUFFICIENT AGAINST A WARRANTLESS ARREST

20.    An Equal Protection class-of-one claim is proper when "plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Following *Olech*, the Seventh Circuit has struggled to define the precise contours of a class-of-one cause of action. *See Lauth v. McCollum*, 424 F.3d 631, 632-33 (7th Cir. 2005) (Posner, J); *see also Bell v. Duperrault*, 367 F.3d 703, 709-11 (7th Cir. 2004) (Posner, J. concurring) (noting the lack of clarity following the *Olech* decision and the varying lines of authority set forth by the several circuits). In attempting to reign in the potential breadth of the class-of-one claim, the Seventh Circuit established that where a rational or legitimate reason may be hypothesized, an Equal Protection class-of-one claim fails as a matter of law. *McCollum*, 424 F.3d at 634 (holding that a class-of-one plaintiff must surpass rational scrutiny and negative any reasonably conceivable state of facts that could provide a rational basis for the government action). The complained of action "only fails rational basis scrutiny if no sound reason for the action can be hypothesized." *Id*. at 634. (citations omitted). Recognizing the theoretical and practical problems associated with the equal protection class-of-one claim, the Supreme Court recently addressed the class-of-one theory in the public employer context. *See Enquist v. Oregon Dep't of Agriculture*, 128 S. Ct. 2146 (U.S. 2008). In *Enquist*, the Supreme Court reasoned that *Olech* was more an application of the Equal Protection Clause guarantee of freedom from arbitrary government classification than an exception to the requirement for suspect classification. *See Enquist*, 128 S. Ct. at 2153. The Supreme Court held that the core concerns

-12-

of the Equal Protection Clause are not implicated in disputes inherently circumscribed by the discretionary exercise of the state's authority to fire an employee. *Id*. at 2153-57 (holding the class-of-one theory does not apply in the public employment context). The reasoning in *Enquist* fully applies to eliminate the application of the class-of-one theory to an equally discretionary exercise of a warrantless arrest.

21.     Plaintiff's class-of-one claim, Count VII, merely recites Equal Protection language and is nothing but a challenge to the legitimacy of his arrest for a criminal violation. Given the subjective, contextual decision-making inherent in every arrest, there are no set of circumstances sufficiently similar to enable any meaningful Equal Protection analysis. *See Enquist*, 128 S. Ct. at 2154 ("allowing a challenge based on arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise"); *see also Sheik-Abdi v. McClellan*, 37 F. 3d 1240, 1246 (7th Cir. 1994) (addressing probable cause to arrest and the "endless scenarios confronting police officers in their daily regimen"). Therefore, plaintiff's class-of-one claim fails and should be dismissed.

## III.     IN THE ALTERNATIVE, THIS COURT SHOULD REQUIRE A MORE DEFINITE STATEMENT OF FACTS

22.     Under certain circumstances, a court can require a plaintiff to state facts in addition to those in the original complaint by granting a motion for a more definite statement brought pursuant to Federal Rule of Civil Procedure 12(e). Rule 12(e) allows for a more definite statement "if a pleading to which a responsive pleading is permitted is so vague or ambiguous that the moving party cannot reasonably be required to frame a responsive pleading." Fed. R. Civ. P. 12(e). Rule 12(e) was intended as a means of relief where there is vagueness and

ambiguity in the sense of indefiniteness of facts as well as in instances where there is vagueness and ambiguity in the sense of lacking clarity of expression. *Parus v. Cator*, 2005 WL 1458770 at *3 (W.D. Wis. 2005) (Crabb, J.) (Attached hereto as Exh. G) (granting Rule 12(e) relief upon finding that a counterclaim failed to indicate what the plaintiff said or did when, where, and under what circumstances so as to make him liable to defendant).

23.    In this Case, the complaint is so vague and ambiguous that the Defendant City cannot reasonably be required to frame a responsive pleading without a more definite statement by plaintiff.  As noted above, plaintiff has not provided the location of his arrest or where the force was used, the time, the number of officers involved a description of the alleged encounter, or any detail other than that force was used and he was arrested.  Plaintiff has failed to provide the essential facts that might point Defendant City in the right direction to investigate his claim. *Cf. Kloupa v. Roselle Park District*, 438 F.3d 713, 714 (7th Cir. 2006) ("[i]t is enough to name the plaintiff and the defendant, state the nature of the grievance, and give a few tidbits (such as the date) that will let the defendant investigate").

24.    Alternatively, Defendant City requests that this Court order plaintiff to provide a more definite statement so that the City is fairly given notice of his claims.

## CONCLUSION

Plaintiff's complaint should be dismissed pursuant to Rule 12(b)(6) because it fails to state a claim against Defendant City upon which relief can be granted.  Specifically against the City, plaintiff's *Monell* claim (Count VIII) and Equal Protection class-of-one claim (Count VII) are inadequate and improper, and should be dismissed.  Alternatively, plaintiff's complaint should be supplemented pursuant to Rule 12(e) because, as it stands, it is so vague and

-14-

ambiguous that Defendant City cannot meaningfully investigate and prepare a responsive

pleading.

Respectfully submitted,

MARA S. GEORGES
Corporation Counsel
of the City of Chicago

BY:     /s/ Helen C. Gibbons
        HELEN C. GIBBONS
        Assistant Corporation Counsel

30 North LaSalle Street, Room 1020
Chicago, Illinois  60602
(312) 742-3541
Attorney No. 6292881

-15-

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, certifies that on **July 18, 2008**, she electronically filed the foregoing **DEFENDANT CITY OF CHICAGO'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record in this matter registered to receive notice through the CM/ECF system.

By:    /s/ Helen C. Gibbons
       HELEN C. GIBBONS

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RODERICK TRICE, | ) | |
| | ) | |
| Plaintiff, | ) | 08 C 2387 |
| | ) | |
| v. | ) | |
| | ) | Judge Lefkow |
| TISDALE, et al., | ) | |
| | ) | Magistrate Judge Schenkier |
| Defendants. | ) | |

## DEFENDANT'S MOTION TO DISMISS APPENDIX OF EXHIBITS

| EXHIBIT | DESCRIPTION |
|---|---|
| A | Plaintiff's Complaint |
| B | *Moumji v. City of Chicago, et al.,* No. 07 C 5256, Slip op. (N.D. Ill June 9, 2008) (Lefkow, J.). |
| C | *Brown v. City of Chicago*, 2001 WL 1002484 at *3 (N.D. Ill. 1997) (Marovich, J.). |
| D | *Catchings v. City of Chicago*, 2005 WL 1027127 at *4 (N.D. Ill. 2005) (Gettleman, J.). |
| E | *Mumm v. Wetter*, 2006 WL 163151 at *4 (N.D. Ill. 2006) (St. Eve, J.). |
| F | *Michael Johnson v. City of Chicago, et al.*, 08 C 2629 (J. Holderman), Complaint. |
| G | *Parus v. Cator*, 2005 WL 1458770 at *3 (W.D. Wis. 2005) (Crabb, J.) |

**DEFENDANT'S EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RODERICK TRICE, | FILED |
| | APRIL 26, 2008    YM |
| Plaintiff, | 08CV2387 |
| | JUDGE LEFKOW |
| v. | MAGISTRATE JUDGE SCHENKIER |
| SECURITY GUARD TISDALE, MILTON REED, EASTLAKE MANAGEMENT GROUP, INC., UNKNOWN CHICAGO POLICE OFFICERS, and the CITY OF CHICAGO, | No. |
| Defendants. | |

## COMPLAINT AT LAW

NOW COMES the PLAINTIFF, by and through the HORWITZ, RICHARDSON & BAKER, LLC., and pursuant to this Complaint at Law, states the following against the above named Defendants, to wit SECURITY GUARD TISDALE, MILTON REED, EASTLAKE MANAGEMENT GROUP, INC., UNKNOWN CHICAGO POLICE OFFICERS, (herein afterwards the "DEFENDANT OFFICERS") and the CITY OF CHICAGO.

### JURISDICTION

1.    The jurisdiction of the court is invoked pursuant to the Civil Rights Act, 42 U.S.C. § 1983; the Judicial Code, 28 U.S.C. §1331 and §1343(a); the Constitution of the United States; and this Court's supplementary jurisdiction powers.

### PARTIES

2.    PLAINTIFF is a resident of the State of Illinois and of the United States.

3.    The DEFENDANT OFFICERS were at all times relevant hereto employed by and acting on behalf of the CITY OF CHICAGO.

1

4.    The CITY OF CHICAGO is a duly incorporated municipal corporation and is the
employer and principal of the DEFENDANT OFFICERS as well as the other officers and/or
employees referred to in this Complaint (as indicated in the *Monell* claim alleged herein).  At all
times material to this complaint, the DEFENDANT OFFICERS were acting under color of state
law, ordinance and/or regulation, statutes, custom and usages of the CITY OF CHICAGO.

5.    EASTLAKE MANGEMENT GROUP, INC. is Corporation doing business in the State
of Illinois.

6.    SECURITY GUARD TISDALE and MILTON REED were, at all relevant times to this
complaint, agents, servants, and/or employees of EASTLAKE MANGEMENT GROUP, INC.

### FACTS

7.    On or about November 2, 2007, some or all of the DEFENDANT OFFICERS were
engaged in an unreasonable seizure of the PLAINTIFF.   This conduct violated the Fourth
Amendment to the United States Constitution.

8.    The DEFENDANT OFFICERS charged and/or participated in the charging of
PLAINTIFF with criminal activity, and arrested, participated in the arrest and/or failed to
prevent the arrest of the PLAINTIFF notwithstanding the fact that the DEFENDANT
OFFICERS failed to observe and/or learn that PLAINTIFF had committed criminal activity of
any sort.  The DEFENDANT OFFICERS did not have probable cause to believe that criminal
activity took place relative to the PLAINTIFF.

9.    On November 2, 2007, PLAINTIFF had not committed an act contrary to the laws of the
State of Illinois.

10.    As a direct and proximate result of one or more of the aforesaid acts or omissions of the
DEFENDANT OFFICERS, PLAINTIFF was caused to suffer damages.

2

11.     On or about November 2, 2007, the DEFENDANT OFFICERS were on duty at all times

relevant to this complaint and were duly appointed police officers for the CITY OF CHICAGO.

The DEFENDANT OFFICERS engaged in the conduct complained of, on said date, in the

course and scope of employment and while on duty.  This action is being brought with regard to

the individual capacity of the DEFENDANT OFFICERS.

12.     On or about November 2, 2007, SECURITY GUARD TISDALE and MILTON REED

intentionally and maliciously instituted, pursued, and/ or caused to be instituted or pursued a

legal criminal action against Plaintiff, without probable cause, said legal action terminated in

favor of Plaintiff in a manner indicative of innocence.

13.     On or about November 2, 2007, SECURITY GUARD TISDALE and MILTON REED

were engaged in the conduct complained of, on said date, and were in the the course and scope of

employment and while on duty.

14.     Upon information and belief, SECURITY GUARD TISDALE, on November 2, 2007,

came into physical contact with PLAINTIFF.

15.     Upon information and belief, MILTON REED, on November 2, 2007, came into physical

contact with PLAINTIFF.

16.     Upon information and belief, UNKNOWN CHICAGO POLICE OFFICERS on

November 2, 2007, came into physical contact with PLAINTIFF.

## CONSPIRACY

17.     Some or all of the DEFENDANT OFFICERS along with SECURITY GUARD

TISDALE and MILTON REED  conspired to cause damage to PLAINTIFF in the following

manner:

        a.      agreeing to falsely arrest and/or falsely institute criminal
        charges/proceedings against the PLAINTIFF;

3

b.    agreeing not to report each other after falsely arresting and/or charging PLAINTIFF;

c.    generating false documentation to cover-up for their own and each other's misconduct;

18.    In connection with the above conspiracy, the DEFENDANT OFFICERS along with SECURITY GUARD TISDALE and MILTON REED specifically engaged in communication on or about November 2, 2007, whereby the DEFENDANT OFFICERS along with SECURITY GUARD TISDALE and MILTON REED agreed to facilitate, engage in and support the activity which occurred in connection with the allegations immediately above.  As a result of this conspiracy, the DEFENDANT OFFICERS along with SECURITY GUARD TISDALE and MILTON REED by and through their conduct, proximately caused PLAINTIFF to, *inter alia*, suffer injury, be charged with criminal allegations, incur financial loss, including attorneys' fees, and suffer emotionally.

## EQUAL PROTECTION

19.    The actions of the DEFENDANT OFFICERS, in engaging in the above referenced cover-up, which led to the generation of false documentation and criminal charges to be lodged against PLAINTIFF, demonstrate that the DEFENDANT OFFICERS failed in their duty to enforce the laws equally and fairly towards the PLAINTIFF, therefore violating the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

20.    In connection with the Equal Protection Claim, PLAINTIFF is a member of a protected class (African American) and PLAINTIFF was treated differently by the DEFENDANT OFFICERS as a result.  The DEFENDANT OFFICERS acted with discriminatory intent by treating PLAINTIFF differently, trying to cause further injury to PLAINTIFF by illegally

4

generating false evidence against and criminally charging PLAINTIFF, specifically due to the status of PLAINTIFF as an African American.

21.     In the alternative, with regard to an Equal Protection Claim, PLAINTIFF was a "Class of One." In that regard, PLAINTIFF was treated with ill will and/or discriminated against with no rational basis. PLAINTIFF was intentionally treated differently as a result of witnessing police misconduct attributable to the DEFENDANT OFFICERS. The DEFENDANT OFFICERS acted with discriminatory intent by treating PLAINTIFF differently and trying to cause further injury to PLAINTIFF by generating false evidence against PLAINTIFF. Further, PLAINTIFF was similarly situated to other individuals who interact with police officers that were not falsely arrested.

### *MONELL* ALLEGATIONS

22.     It is the custom, practice and/or policy of police officers and/or their supervisors/agents and/or other employees of the CITY OF CHICAGO to perform the following acts and/or omissions:

a.     generate false documentation to cover-up for the misconduct of fellow police officers;

b.     engage in acts of false arrest, fabrication of evidence, malicious prosecution, and/or misrepersentaion of facts;

c.     fail to properly discipline officers from said police department who have committed acts false arrest, fabrication of evidence, malicious prosecution, and/or misrepersentaion of facts;

d.     fail to properly investigate a complaint of false arrest, fabrication of evidence, malicious prosecution, and/or misrepersentaion of facts perpetrated by a CITY OF CHICAGO police officer upon another;

e.     fail to take proper remedial action against a CITY OF CHICAGO police officer once it is determined that an act of false arrest, fabrication of evidence, malicious prosecution, and/or misrepersentaion of facts has been committed by said officer upon another;

f.     allow misconduct to occur in various types and severity such that police officers believe that they can engage in false arrest, fabrication of evidence, malicious prosecution, and/or misrepersentaion of facts without repercussions and/or significant repercussions;

g.     fail to provide adequate sanctions/discipline to officers who commit false arrest, fabrication of evidence, malicious prosecution, and/or misrepersentaion of facts, such that a permissive atmosphere exists among officers wherein they believe that they will not be disciplined (or significantly disciplined) for engaging in such behavior;

h.     fail to provide adequate sanctions/discipline to officers who falsify police reports, investigations and/or internal investigations, causing said officers to believe that they can manufacture evidence which will cause them to not be disciplined or significantly disciplined for engaging in illegal behavior, *inter alia* false arrest, fabrication of evidence, malicious prosecution, and/or misrepersentaion of facts;

i.     fail to provide adequate sanctions/discipline to officers who falsify police reports, investigations and/or internal investigations, causing said officers to believe that they can manufacture evidence which will cause them to not be disciplined or significantly disciplined for engaging in behavior which violates the rules, policies and/or procedures of the CITY OF CHICAGO police department;

j.     fail to properly investigate officers who falsify police reports, investigations and/or internal investigations, causing said officers to believe that they can manufacture evidence which will cause them to not be disciplined or significantly disciplined for engaging in behavior which violates the rules, policies and/or procedures of the CITY OF CHICAGO police department;

k.     fail to take proper remedial measures to prevent and/or correct officers who falsify police reports, investigations and/or internal investigations, causing said officers to believe that they can manufacture evidence which will cause them to not be disciplined or significantly disciplined for engaging in illegal behavior, *inter alia* false arrest, fabrication of evidence, malicious prosecution, and/or misrepersentaion of facts;

l.     fail to take proper remedial measures to prevent and/or correct officers who falsify police reports, investigations and/or internal investigations, causing said officers to believe that they can manufacture evidence which will cause them to not be disciplined or significantly disciplined for engaging in behavior which violates the rules, policies and/or procedures of the CITY OF CHICAGO police department;

m.     fail to properly investigate officers who commit acts of false arrest, fabrication of evidence, malicious prosecution, and/or misrepersentaion of facts, such that a permissive atmosphere exists among officers wherein they believe that they will not be disciplined (or significantly disciplined) for engaging in misconduct with citizens;

n.     fail to take proper remedial action with officers who commit acts of false arrest, fabrication of evidence, malicious prosecution, and/or misrepersentaion of facts, such that a

permissive atmosphere exists among officers wherein they believe that they will not be disciplined (or significantly disciplined) for engaging in misconduct with citizens; and

o.     fail to provide proper training to prevent officers from participating in false arrest, fabrication of evidence, malicious prosecution, and/or misrepersentaion of facts, and violating the rules, policies and procedures of the CITY OF CHICAGO police department.

23.     This practice and/or custom, as alleged above, has gone unchecked and been allowed to exist in the CITY OF CHICAGO for a significant period of time, so much so, that police officers for the CITY OF CHICAGO recognize that they will not be punished for committing said acts and that, in fact, said acts are either permitted or quietly consented to by superior officers of the CITY OF CHICAGO police department in order to permit said conduct to re-occur.

24.     A code of silence exists between officers of the Defendant Municipality.  This code of silence obstructs the legal process (preventing the free flow of honest information with regard to acts of misconduct).  This code of silence contributes to the generation of secrets, in the department, regarding police officer misconduct.

### COUNT I
### §1983 False Arrest

25.     PLAINTIFF re-alleges paragraphs 1 – 24 as though fully set forth herein.

26.     The actions of the DEFENDANT OFFICERS caused the arrest of the PLAINTIFF without probable cause to believe that PLAINTIFF committed criminal activity.  Therefore, the conduct of the DEFENDANT OFFICERS was in violation of the Fourth Amendment to the United States Constitution.

27.     The aforementioned actions of the DEFENDANT OFFICERS were the direct and proximate cause of the Constitutional violations set forth above.

WHEREFORE, PLAINTIFF demands compensatory damages from the DEFENDANT OFFICERS.  PLAINTIFF also demands punitive damages, costs and attorneys' fees against the

DEFENDANT OFFICERS.  PLAINTIFF also demands whatever additional relief this Court

deems equitable and just.

## COUNT II
### False Arrest - State Claim

28.    PLAINTIFF re-alleges paragraphs 1 – 24 as though fully set forth herein.

29.    The DEFENDANT OFFICERS arrested PLAINTIFF without probable cause to believe

that PLAINTIFF committed criminal activity.  The conduct of the DEFENDANT OFFICERS

was in violation of the Constitution to the State of Illinois as well as Illinois law.

30.    The aforementioned actions of the DEFENDANT OFFICERS were the direct and

proximate cause of the violations set forth above.

WHEREFORE, PLAINTIFF demands compensatory damages from the DEFENDANT

OFFICERS.  PLAINTIFF also demands punitive damages and costs against the DEFENDANT

OFFICERS.  PLAINTIFF also demands whatever additional relief this Court deems equitable

and just.

## COUNT III
### Malicious Prosecution - State Claim

31.    PLAINTIFF re-alleges paragraphs 1 – 24 as though fully set forth herein.

32.    The DEFENDANT OFFICERS along with SECURITY GUARD TISDALE and

MILTON REED alleged that PLAINTIFF violated the laws of the State of Illinois.  These

allegations commenced or continued a criminal proceeding against PLAINTIFF.

33.    The DEFENDANT OFFICERS along with SECURITY GUARD TISDALE and

MILTON REED engaged in this effort without probable cause.

34.    The underlying criminal charges were ultimately resolved in favor of PLAINTIFF.

35.    The underlying criminal charges were resolved in a manner indicative of innocence.

36.    The aforementioned actions were the direct and proximate cause of the violations of Illinois State Law, as set forth above.

WHEREFORE, PLAINTIFF demands compensatory damages from the DEFENDANT OFFICERS, SECURITY GUARD TISDALE and MILTON REED.  PLAINTIFF also demands punitive damages and costs against the DEFENDANT OFFICERS, SECURITY GUARD TISDALE and MILTON REED.  PLAINTIFF also demands whatever additional relief this Court deems equitable and just.

**COUNT IV**
**§ 1983 Conspiracy Claim**

37.    PLAINTIFF re-alleges paragraphs 1 – 24 as though fully set forth herein.

38.    The aforementioned actions of the DEFENDANT OFFICERS were the direct and proximate cause of the violations of the United States Constitution, *inter alia* the Fourth Amendment and Fourteenth Amendment.

WHEREFORE, PLAINTIFF demands compensatory damages from the DEFENDANT OFFICERS.  PLAINTIFF also demands punitive damages, costs and attorneys' fees against the DEFENDANT OFFICERS.  PLAINTIFF also demands whatever additional relief this Court deems equitable and just.

**COUNT V**
**Conspiracy Claim – State Law**

39.    PLAINTIFF re-alleges paragraphs 1 – 24 as though fully set forth herein.

40.    The aforementioned actions of DEFENDANT OFFICERS, SECURITY GUARD TISDALE and MILTON REED were the direct and proximate cause of the violations of the Constitution of the State of Illinois and Illinois law.

WHEREFORE, PLAINTIFF demands compensatory damages from the DEFENDANT OFFICERS, SECURITY GUARD TISDALE and MILTON REED. PLAINTIFF also demands punitive damages and costs against the DEFENDANT OFFICERS, SECURITY GUARD TISDALE and MILTON REED. PLAINTIFF also demands whatever additional relief this Court deems equitable and just.

**COUNT VI**
**§ 1983 Equal Protection – Member of a Protected Class**

41.    PLAINTIFF re-alleges paragraphs 1 – 24 as though fully set forth herein.

42.    The actions of the DEFENDANT OFFICERS violated the Equal Protection clause to the United States Constitution.

43.    The aforementioned actions of said DEFENDANT OFFICERS were the direct and proximate cause of the constitutional violations set forth above.

WHEREFORE, PLAINTIFF demands compensatory damages from the DEFENDANT OFFICERS. PLAINTIFF also demands punitive damages, costs and attorneys' fees against the DEFENDANT OFFICERS. PLAINTIFF also demands whatever additional relief this Court deems equitable and just.

**COUNT VII**
**§ 1983 Equal Protection – Class of One**

44.    PLAINTIFF re-alleges paragraphs 1 – 24 as though fully set forth herein.

45.    The actions of the DEFENDANT OFFICERS violated the Equal Protection clause to the United States Constitution.

46.    The aforementioned actions of said DEFENDANT OFFICERS were the direct and proximate cause of the constitutional violations set forth above.

WHEREFORE, PLAINTIFF demands compensatory damages from the DEFENDANT OFFICERS. PLAINTIFF also demands punitive damages, costs and attorneys' fees against the DEFENDANT OFFICERS. PLAINTIFF also demands whatever additional relief this Court deems equitable and just.

## COUNT VIII – *Monell*

47.    PLAINTIFF re-alleges paragraphs 1 – 24 as though fully set forth herein.

48.    As a direct and proximate result of the aforementioned acts and omissions by Defendant CITY OF CHICAGO there existed a custom, practice, policy, and/or pattern, either implicit or explicit, of the CITY OF CHICAGO in which officers were not held accountable for their wrongful and/or illegal acts.

49.    Said custom, practice, policy, and/or pattern of the CITY OF CHICAGO encouraged, endorsed, created willful ignorance of, or otherwise promoted said wrongful acts of the DEFENDANT OFFICERS.

50.    As a direct and proximate result of said custom, practice, policy, and/or pattern, either implicit or explicit, of the CITY OF CHICAGO, PLAINTIFF was injured in a personal and pecuniary manner.

WHEREFORE, PLAINTIFF demands compensatory damages against the CITY OF CHICAGO, costs and attorneys' fees. PLAINTIFF also demands whatever additional relief this Court deems equitable and just.

## COUNT IX
## 745 ILCS 10/9-102 Claim Against the CITY OF CHICAGO

51.    PLAINTIFF re-alleges paragraphs 1 – 24 as though fully set forth herein.

52.    Defendant CITY OF CHICAGO is the employer of the DEFENDANT OFFICERS alleged above.

11

53.    The DEFENDANT OFFICERS, as alleged above, committed the acts under color of law and in the scope of employment of the CITY OF CHICAGO.

WHEREFORE, should the DEFENDANT OFFICERS be found liable for any of the alleged counts in this cause, PLAINTIFF demands that, pursuant to 745 ILCS 10/9-102, the CITY OF CHICAGO pay PLAINTIFF any judgment obtained against the DEFENDANT OFFICERS as a result of this complaint.

## COUNT X
### Supplementary Claim for *Respondeat Superior* Against City of Chicago

54.    PLAINTIFF re-alleges paragraphs 1 – 24 as though fully set forth herein.

55.    The aforesaid acts of the DEFENDANT OFFICERS were in the scope of employment and therefore the Defendant CITY OF CHICAGO, as principal, is liable for the actions of its agent(s) under the doctrine of *respondeat superior.*

WHEREFORE should the DEFENDANT OFFICERS be found liable for any state claims alleged herein, Plaintiff demands judgment against the CITY OF CHICAGO and such other additional relief, as this Court deems equitable and just.

## COUNT XI
### Supplementary Claim for *Respondeat Superior* Against Eastlake Management Group, Inc,

56.    PLAINTIFF re-alleges paragraphs 1 – 24 as though fully set forth herein.

57.    The aforesaid acts of SECURITY GUARD TISDALE and MILTON REED were in the scope of employment and therefore the Defendant EASTLAKE MANAGEMENT GROUP, INC., as principal, is liable for the actions of its agent(s) under the doctrine of *respondeat superior.*

WHEREFORE should SECURITY GUARD TISDALE and/or MILTON REED be found liable for any state claims alleged herein, Plaintiff demands judgment against EASTLAKE

MANAGEMENT GROUP, INC. and such other additional relief, as this Court deems equitable and just.

## COUNT XII
### Injunctive Relief and/or Extraordinary Relief

58.    PLAINTIFF re-alleges paragraphs 1 – 24 as though fully set forth herein.

59.    PLAINTIFF'S mother resides at Lawless Garden Apartments in the 3600 Block of South Rhodes, Chicago, Illinois.

60.    DEFENDANTS EASTLAKE MANAGEMENT GROUP, INC., SECURITY GUARD TISDALE, and MILTON REED control visitor access to this location.

61.    The aforesaid acts of all Defendants caused or facilitated PLAINTIFF being placed on a "List of Barred Persons" at Lawless Garden Apartments.

62.    As a result of PLAINTIFF being placed on a "List of Barred Persons" at Lawless Garden Apartments by DEFENDANTS EASTLAKE MANAGEMENT GROUP, INC., SECURITY GUARD TISDALE, and MILTON REED, PLAINTIFF'S mother was issued a "LANDLORD'S NOTICE OF MATERIAL LEASE VIOLATION AND PROBATION" when PLAINTIFF visited his mother on or about November 2, 2007.

63.    As part of the aforementioned NOTICE, PLAINTIFF cannot visit his mother at her home without violating her lease and potentially having her lease canceled or not renewed by actions of DEFENDANTS EASTLAKE MANAGEMENT GROUP, INC., SECURITY GUARD TISDALE, and MILTON REED.

64.    While on the "List of Barred Persons" PLAINTIFF cannot visit his mother without violating her lease and potentially having her lease canceled or not renewed by actions of DEFENDANTS EASTLAKE MANAGEMENT GROUP INC., SECURITY GUARD TISDALE, and MILTON REED.

65.     PLAINTIFF had not commited any acts on or prior to November 2, 2007, which warrant

his inclusion on a "List of Barred Persons."

WHEREFORE, PLAINTIFF prays this Court to order DEFENDANTS EASTLAKE

MANAGEMENT GROUP, INC., SECURITY GUARD TISDALE, and MILTON REED to

remove PLAINTIFF from the "List of Barred Persons." PLAINTIFF also prays this Court order

DEFENDANTS EASTLAKE MANAGEMENT GROUP INC., SECURITY GUARD

TISDALE, and MILTON REED revoke, rescind, or otherwise vacate any prior notices caused by

PLAINTIFF'S visits to his mother at Lawless Garden Apartments; and order any such other

additional relief, as this Court deems equitable and just.

## JURY DEMAND

66.     Plaintiff demands trial by jury.


Respectfully submitted,

s/ Blake Horwitz
Attorney for the Plaintiff
Blake Horwitz


**HORWITZ, RICHARDSON & BAKER, LLC.**
Two First National Plaza
20 S. Clark St. Suite 500
Chicago, Illinois 60603
Ph (312) 676-2100
Fax (312) 372-7076

## **DEFENDANT'S EXHIBIT B**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SARKIS MOUMJI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 07-CV-5256 |
| v. | ) | |
| | ) | Judge Joan H. Lefkow |
| OFFICER KONIOR #2351, | ) | |
| OFFICER ACCARDO #3392, | ) | |
| OFFICER KOLASKI #8017, | ) | |
| OFFICER #8217, OFFICER #8221, | ) | |
| OFFICER HOLMEN #732, and | ) | |
| The CITY OF CHICAGO, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiff Sarkis Moumji has filed a 20-page amended complaint in this court against the

City of Chicago ("the City") and six Chicago Police Officers: Officer Konior #2351, Officer

Accardo #3392, Officer Kolaski #8017, Officer #8217, Officer #8221, and Officer Holmen #732.

His amended complaint contains the following counts: (1) excessive force under 42 U.S.C. §

1983, (2) false arrest under § 1983, (3) false arrest under Illinois law, (4) battery under Illinois

law, (5) malicious prosecution under Illinois law, (6) conspiracy under § 1983, (7) conspiracy

under Illinois law, (8) violation of his right to equal protection of the laws as a class of one, (9) a

claim against the City of Chicago under *Monell* v. *New York City Dept. of Social Servs.*, 436

U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), (10) a claim against the City under 745 Ill.

Comp. Stat. 10/9-102, and (11) a *respondeat superior* claim against the City under Illinois law.

The City has filed a motion to dismiss Moumji's amended complaint for failure to state a claim

upon which relief may be granted under Fed. R. Civ. P. 12(b)(6) or in the alternative for a more

definite statement pursuant to Rule 12(e). For the following reasons, the City's motion to

dismiss will be granted.

The facts as stated in the amended complaint are the following:

5. On or about July 6, 2007, some or all of the DEFENDANT OFFICERS were engaged in an unreasonable seizure of the PLAINTIFF. This conduct violated the Fourth Amendment to the United States Constitution.

6. On or about July 6, 2007, PLAINTIFF did not obstruct justice, resist arrest, batter and/or assault any of the DEFENDANT OFFICERS.

7. The show of force initiated by and/or the failure to intervene in the use of said force by the DEFENDANT OFFICERS caused an unreasonable seizure [of] the PLAINTIFF.

8. The DEFENDANT OFFICERS charged and/or participated in the charging of PLAINTIFF with criminal activity, and arrested, participated in the arrest and/or failed to prevent the arrest of the PLAINTIFF notwithstanding the fact that the DEFENDANT OFFICERS failed to observe and/or learn that PLAINTIFF had committed criminal activity of any sort. The DEFENDANT OFFICERS did not have probable cause to believe that criminal activity took place relative to the PLAINTIFF.

9. On July 6, 2007, PLAINTIFF had not committed any act contrary to the laws of the State of Illinois.

10. As a direct and proximate result of one or more of the aforesaid acts or omissions of the DEFENDANT OFFICERS, PLAINTIFF was caused to suffer damages.

11. On or about July 6, 2007, the DEFENDANT OFFICERS were on duty at all times relevant to this Complaint and were duly appointed police officers for the CITY OF CHICAGO. The DEFENDANT OFFICERS engaged in the conduct complained of, on said date, in the course and scope of employment and while on duty. This action is being brought with regard to the individual capacity of the DEFENDANT OFFICERS.

12. Upon information and belief, OFFICER WITH STAR NUMBER 2351, on July 6, 2007, came into physical contact with PLAINTIFF.

13. Upon information and belief, UNKNOWN OFFICERS, on July 6, 2007, came into physical contact with PLAINTIFF.

Amended complaint, at ¶¶ 5-13.

Moumji alleges a custom, practice or policy of the City and its police officers consisting

of a litany of misconduct and omissions, including engaging in acts of false arrest, malicious

prosecution, fabrication of evidence, misrepresentation of facts, significant intrusions to the body

2

of innocent citizens, excessive force, and/or serious acts of violence; covering up for the misconduct of fellow police officers; failure to discipline; failure to investigate complaints of misconduct, failure to take proper remedial action, failure to train, and a general "code of silence." Amended complaint, at ¶ 17a-o.

Moumji also includes eight pages of allegations in his amended complaint regarding misconduct on the part of officers of the Special Operations Section of the Chicago Police Department ("SOS officers"), inadequate oversight by the City's Office of Professional Standards ("the OPS"), misconduct of certain officers previously convicted of crimes in this court (Broderick Jones, Corey Flagg, and Eural Black), facts found by Judge Holderman regarding officers involved in the case of *Garcia* v. *City of Chicago*, 2003 U.S. Dist. LEXIS 16565 (N.D. Ill. Sept. 19, 2003), the City's abandonment of Brainmaker, a software program that was intended to predict misconduct among police officers, and miscellaneous facts regarding general lawlessness in the Chicago Police Department over the past three decades and the connection of that lawlessness to politics. Amended complaint, at 7-15.

## DISCUSSION

The City argues first that under *Bell Atlantic Corp.* v. *Twombly*, — U.S. —, 127 S. Ct. 1955, 1969, 167 L. Ed. 2d 929 (2007), and *EEOC* v. *Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007), Moumji's amended complaint fails to give notice of the facts that form a basis for his claims. It notes that the only facts Moumji has alleged are that on July 6, 2007, the defendant officers, "on information and belief," came into physical contact with him, and unreasonably arrested him. *See* amended complaint, at ¶¶ 12-13. Moumji does not respond to this argument in his response brief with respect to his non-*Monell* claims other than to request

3

leave to amend any aspect of his complaint that the court finds deficient. Response, at 8. He does, however, narrate facts that are not stated in his complaint, including details regarding the July 6, 2007 incident. Response, at 1.

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. In ruling on a motion to dismiss, the court accepts as true all well-pleaded facts alleged in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002); *Jackson* v. *E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir. 1999). To state a claim, the complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). As articulated by the court in *Concentra*, "[t]he Supreme Court has interpreted that language to impose two easy-to-clear hurdles. First, the complaint must describe the claim in sufficient detail to give the defendant 'fair notice of what the ... claim is and the grounds upon which it rests.' *Bell Atlantic Corp.* v. *Twombly*, — U.S. —, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007) (quoting *Conley* v. *Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)) (alteration in *Bell Atlantic*). Second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court." *Concentra*, 496 F.3d 773, 776-77 (citing *Bell Atlantic*, 127 S. Ct. at 1965, 1973 n.14).

Moumji's allegations are insufficient. Alleging the date of an incident and that he came into physical contact with an officer cannot be enough to raise the possibility of his right to relief under any one of his eleven different legal theories above a speculative level. Those facts do not provide the defendants with enough information to answer the complaint or defend themselves.

4

Moumji's statement of facts in his response brief, however, shows that he knows of at least some additional facts that can be pled. The court will grant him leave to file a second amended complaint, and in that complaint he should plead the facts that he can readily provide and that will be helpful to expeditiously resolve this case. *See Concentra*, 496 F.3d at 780.

The City next argues that Moumji has not adequately pled a *Monell* claim because he has failed to define any particular custom, policy, or practice that allegedly caused the violation of his constitutional rights or any facts that would directly substantiate such a custom, policy, or practice. Additionally, it contends that the allegations of general lawlessness in the City and the Police Department are irrelevant and improper and should be stricken from the amended complaint.

Moumji concedes in his response brief that neither SOS officers, nor Officers Jones, Flagg, and Black, nor the officers involved in *Garcia* were involved in this case, and that his case does not involve similar facts to theirs. He is not claiming that OPS's involvement (or lack thereof) or the abandonment of the Brainmaker project caused the violation of his constitutional rights. Moumji argues instead that his general allegations are relevant as "examples" of police misconduct "that serve to perpetuate the code of silence" and that they "bolster and allege in detail" his *Monell* claim. See Response, at 5-6; Amended Complaint, at 9 n.1.[1]

---

[1] For example, regarding the SOS officers, Moumji states, "Defendant City argues that this is not an SOS case. See Motion at p. 9. The City, however, misinterprets Plaintiff's allegations. Plaintiff is not arguing that the officers involved in Plaintiff's arrest and prosecution were members of SOS; rather, Plaintiff alleges that allowing the SOS officers to remain on the street despite a pattern of misconduct complaints and criminal conduct has served to perpetuate the 'code of silence' practice within the Chicago Police Department thus causing the Defendant officers to believe that there would be little or no consequences for their misconduct toward Plaintiff. See Complaint at ¶ 19." Response, at 5.

5

To allege that a municipal policy has violated his rights under Section 1983, Moumji must allege that "(1) the City had an express policy that, when enforced, causes a constitutional deprivation; (2) the City had a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage within the force of law; or (3) plaintiff's constitutional injury was caused by a person with final policymaking authority." *McCormick* v. *City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000). In order to prevail on a *Monell* claim, "a plaintiff must ... demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Board of County Comm'rs of Bryan County, Okl.* v. *Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997).

There is no heightened fact pleading requirement for *Monell* claims. *McCormick*, 230 F.3d at 323 (citing *Leatherman* v. *Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993)). Instead, just like any other civil claim not included within the specific exceptions of Fed. R. Civ. P. 9(b), they are governed by Rule 8(a)(2)'s notice pleading mandate. *Marcavage* v. *City of Chicago*, 467 F. Supp. 2d 823, 828 (N.D. Ill. 2006). In *McCormick*, the court expressed approval of the practice of pleading a *Monell* claim using legal conclusions at least in part. *Id.* at 324-25. And some decisions in this district hold that legal conclusions can be sufficient by themselves to allege a *Monell* claim. *See, e.g., McNeal* v. *Cook County Sheriff's Dept.*, 282 F. Supp. 2d 865, 868-69 (N.D. Ill. 2003). Others, however, have required plaintiffs to allege at least some facts in order to allow the defendant and the court to understand the gravamen of the claim. *See, e.g, Allgood* v. *City of Chicago*, 2006 WL 2683302, at *6 (N.D. Ill. Sept. 18, 2006) ("Here, [plaintiff] fails to set forth any facts providing fair notice of any policy or practice that allegedly resulted in the deprivation

6

of his constitutional rights. Therefore, the Court dismisses [his *Monell* claim] without prejudice."); *accord Rodgers* v. *Allen*, 2006 WL 2037340, at *4 (N.D. Ill. July 14, 2006); *see also Mumm* v. *Wetter*, 2006 WL 163151, at *4 (N.D. Ill. Jan. 20, 2006) ("Although there is no heightened pleading standard for § 1983 claims, boilerplate allegations of a municipal policy, entirely lacking in any factual support that a policy does exist, are insufficient."); *Brown* v. *City of Chicago*, 2001 WL 1002484, at *3 (N.D. Ill. Aug. 30, 2001). Regardless of who had the better of the argument before *Bell Atlantic*, however, it is now clear that boilerplate allegations cannot alone be sufficient to allege a *Monell* claim. *Mendez* v. *Village of Tinley Park*, 2008 WL 427791, at *2 (N.D. Ill. Feb. 14, 2008) ("[A]lthough the federal rules provide for notice pleading, the facts pled must show that a *Monell* claim is 'plausible' and not merely 'speculative.'") (quoting *Bell Atlantic*, 127 S. Ct. at 1970-74).

Moumji's allegations of a general history of lawlessness, not involving the same police officers or similar factual circumstances to those involved in this case, cannot provide the requisite factual allegations to state his *Monell* claim. Those allegations are irrelevant because they lack the requisite direct causal link with Moumji's alleged injury. The contrary result would violate the rule that *Monell* liability cannot be allowed to collapse into *respondeat superior* liability. *See, e.g, Brown*, 520 U.S. at 415; *Carter* v. *Morris*, 164 F.2d 215, 218 (4th Cir. 1999). As the City's counsel points out, Moumji's attorney has demonstrated this by including identical *Monell* allegations in at least six other Section 1983 cases filed in this district against the City that allege different instances of police misconduct.[2]

---

[2] *Martin* v. *Quinn*, No. 07 C 4991, Dkt. No. 1 (N.D. Ill. Sep. 5, 2007) (Guzman, J.); *Farley* v. *Wilke*, No. 07 C 5254, Dkt. No. 1 (N.D. Ill. Sep. 17, 2007) (Gottschall, J.); *Chaparro* v. *Powell*, 07 C 5277, Dkt. No. 1 (N.D. Ill. Sept. 18, 2007) (Conlon, J.); *Safford* v. *Janik*, No. 07 C 5276, Dkt. No. 1 (N.D. Ill. Sep. 18, 2007) (Coar, J.); *Jones* v. *Unknown Officers*, No. 07 C 5279, Dkt. No. 1 (N.D. Ill. Sep.

7

In one of those cases, *Chaparro* v. *Powell*, 2008 WL 68683, at *3 (N.D. Ill. Jan. 8, 2008),

Judge Conlon said,

> [Plaintiff's *Monell* claim] is deficient. The factual allegations fail to plausibly
> suggest a policy cognizable under *Monell*. The custom or policy underlying a
> *Monell* claim cannot be so amorphous that it effectively exposes a municipality to
> respondeat superior liability. [Plaintiff] relies on a purported "code of silence"
> based on numerous, tenuously related instances of police misconduct. But that
> misconduct is so multifarious that the allegations do not identify a discrete policy
> or custom. Under [plaintiff's] logic, any instance of police misconduct would be
> "caused" by the "code of silence," because any misconduct could be linked to an
> officer's imputed belief he could escape punishment. [Plaintiff's] *Monell* theory
> collapses into *respondeat superior*, an outcome explicitly forbidden by the
> Supreme Court.... Indeed, the injury [plaintiff] allegedly suffered is no more
> related to the "code of silence" than any other injury caused by any other kind of
> police misconduct.

*Chaparro*, 2008 WL 68683, at *3 (internal citation omitted); *cf. Craft* v. *Flagg*, 2008 WL

1883337, at *4 (N.D. Ill. Apr. 24, 2008) (involving similar allegations and the same plaintiff's

attorney but distinguishing *Chaparro* because in *Craft*, the plaintiff did include specific

allegations of previous complaints filed against the particular defendant officers involved).

### ORDER

The City's motion to dismiss Moumji's amended complaint [20] is granted. Moumji's

amended complaint is dismissed without prejudice. Moumji is granted leave to file by July 3,

2008 a second amended complaint that is consistent with this order.

**Dated: June 9, 2008**                    Enter: *Joan H. Lefkow*
                                                        ─────────────────────
                                                        **Joan H. Lefkow**
                                                        **United States District Judge**

---

18, 2007) (Norgle, J.); *McComb* v. *Unknown Officers*, No. 07 C 5564, Dkt. No. 1 (N.D. Ill. Oct. 2, 2007)
(Marovich, J.). As of June 4, 2008, *Chaparro*, discussed below, was the only other one of these seven
cases in which a written opinion had issued on a motion to dismiss a *Monell* claim.

**DEFENDANT'S EXHIBIT C**

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 1002484 (N.D.Ill.)
**2001 WL 1002484 (N.D.Ill.)**

Page 1

**C**
Brown v. City of Chicago
N.D.Ill.,2001.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern
Division.
Christine BROWN, Plaintiff,
v.
CITY OF CHICAGO, and Gerald Weber, Defendants.
**No. 00 C 3514.**

Aug. 30, 2001.

MEMORANDUM OPINION AND ORDER

MAROVICH, District J.
*1 Plaintiff Christine Brown ("Brown") filed a First
Amended Complaint against City of Chicago
("City") and Gerald Weber ("Weber") alleging,
*inter alia,* excessive force (Count I), failure to
provide medical care (Count II), a *Monell* claim
(Count IV), and conspiracy (Count V), pursuant to
42 U.S.C. § 1983 (" § 1983"), and various state
claims (Counts VI-X). The City has moved to dis-
miss Counts IV, V and VIII-X pursuant to
Fed.R.Civ.P. 12(b)(6).[FN1] Weber has moved to
dismiss counts VI and VII.[FN2] For the reasons set
forth below, the Court denies Weber's motion to
dismiss, and grants in part and denies in part the
City's motion to dismiss.

> FN1. The City originally included Count
> III in its motion to dismiss. The City has
> since indicated in its reply brief that it
> withdraws its motion as it relates to that
> claim.

> FN2. There remain three claims against
> Weber (Counts I, II and IV) which Weber
> has answered and which are not the subject
> of these motions.

BACKGROUND

The Complaint alleges the following facts which,
for the purposes of ruling on this motion, are taken
as true. *Hishon v. Kemp & Spalding,* 467 U.S. 69,
73 (1984). Throughout the late night hours of Au-
gust 28, 1998 and the early morning hours of Au-
gust 29, 1998, Brown and Weber, for reasons not
revealed in the Complaint, were together in Weber's
vehicle. Around 7:00 a.m. on August 29, 1998,
Brown and Weber, still in Weber's vehicle, began
to argue. Weber believed he had been the victim of
attempted theft. Weber identified himself to Brown
as a member of the Chicago Police Department
("CPD") and showed Brown his CPD badge. At
that point, Brown got out of the car and fled. Weber
pursued her in his vehicle and on foot. While chas-
ing Brown, Weber again identified himself as an of-
ficer of the CPD and threatened to kill Brown.

Weber eventually cornered Brown under a porch of
the residence located at 6322 South Wood in Chica-
go. There the two struggled and Weber drew his
firearm and shot but missed Brown. Weber fired
again wounding Brown. Weber attempted to fire a
third shot which was foiled when his firearm
jammed. At that point, Weber fled the scene
without calling for medical assistance, leaving
Brown wounded and bleeding. An hour after the in-
cident, Weber reported to the CPD that he had been
the victim of attempted theft and that he had fired
his weapon.

Subsequently, Weber and other officers, including
his partner Officer Kevin Muth, concealed his
wrongdoing. They "fabricate[d] false accounts of
the incident including, but not limited to, the al-
leged fact that two unknown black males working
together with ... [Brown] attempted to "car-jack" ...
Weber, and that ... Weber was in fact with Officer
Muth at an unnamed woman's home during various
times of the evening rather than together with ...
Brown at the scene."(Am.Compl., ¶ 19) As a result
of this incident, Brown "suffered severe physical,
mental, emotional, and psychological injur-
ies."(Am.Compl., ¶ 18)

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 1002484 (N.D.Ill.)
**2001 WL 1002484 (N.D.Ill.)**

Brown's Complaint alleges various § 1983 and state law claims. In response, the City and Weber have each filed the present motions seeking to dismiss these claims.

## DISCUSSION

### I. *Standard for a Motion to Dismiss*

When considering a motion to dismiss, a court must view the complaint's allegations in the light most favorable to the plaintiff, and all well-pleaded facts in the complaint must be accepted as true. *Wilson v. Formigoni,* 42 F.3d 1060, 1062 (7th Cir.1994). Dismissal is proper only if it appears beyond a doubt that a plaintiff can prove no set of facts in support of a claim which would entitle her to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).

**\*2** The Supreme Court has made very clear that there is no heightened pleading requirement for civil rights actions. *Leatherman v. Tarrant Co. Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168 (1993)."Rather, as in all civil litigation, the plaintiff is charged with the responsibility of setting forth, as mandated by Rule 8(a) of the Federal Rules of Civil Procedure, 'a short and plain statement of the claim showing that the pleader is entitled to relief." ' *Baxter by Baxter v. Vigo County Sch. Corp.,* 26 F.3d 728, 734 (7th Cir.1994); *see also Sledd v. Lindsay,* 102 F.3d 282, 288-89 (7th Cir.1996).

While the federal rules require only notice pleading, a complaint "which merely recites bare legal conclusions" cannot survive a motion to dismiss.*Illinois v. Roland,* 812 F.Supp. 855, 862 (N.D.Ill.1993). To withstand a motion to dismiss, a complaint must allege facts which sufficiently set forth the essential elements of the cause of action. *Gray v. County of Dane,* 854 F.2d 179, 182 (7th Cir.1988). In evaluating a motion to dismiss, the Court need not "assign any weight to unsupported conclusions of law."*Id.* To provide fair notice, a complaint "must at least 'include the operative facts

upon which a plaintiff bases his claim." ' *Lucien v. Preiner,* 967 F.2d 1166, 1168 (7th Cir.1992) (quoting *Rodgers v. Lincoln Towing Service, Inc.,* 771 F.2d 194, 198 (7th Cir.1985)).

### II. *Monell Claim*

Under *Monell v. New York City Dep't of Social Servs.,* 436 U.S. 658, 691 (1978), municipalities may be held liable under § 1983 for deprivations of federal rights. Municipal liability, however, is limited to action for which the municipality is actually responsible-that is, acts which the municipality has officially sanctioned or ordered. *Id. Respondeat superior* will not suffice to impose § 1983 liability on the municipality. *Id.* Rather, "it is when the execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."*Id.* at 694.

Courts have identified three instances in which a municipality can be said to have violated the civil rights of a person because of its policy:

(1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.

*Baxter by Baxter,* 26 F.3d at 735 (citations omit- ted).

"*Monell* is a case about responsibility."*Pembaur v. City of Cincinnati,* 475 U.S. 469, 478 (1986). Properly put, the question before this Court is whether Brown's Complaint has appropriately distinguished acts of the municipality from acts of employees of the municipality. In other words, is Brown simply attempting to hold the City vicariously liable for the wrongful acts of its employees-e.g., Weber. With

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 1002484 (N.D.Ill.)
**2001 WL 1002484 (N.D.Ill.)**

this in mind, municipal liability under § 1983 only attaches where "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."*Id.* at 483.

\*3 In Count IV, Brown's Complaint sets forth two allegations of policy by omission. It is Brown's claim that the City acted deliberately indifferent by failing to train its officers regarding excessive force and failing to screen hiring candidates for a propensity towards violence. In order to state a claim for municipal liability for failure to train, Brown needed to allege that the municipality was "on notice of a pattern of constitutional violations resulting from the inadequate training."*Hirsch v. Burke,* 40 F.3d 900, 904 (7th Cir.1994). Likewise, Brown needed to allege notice of such a pattern which resulted from the City's failure to screen employment applicants.

Unfortunately, Brown's Complaint contains nothing more than boilerplate allegations of municipal policies of failing to train employees about excessive force and failing to screen applicants for a propensity towards violence. *See McTigue v. City of Chicago,* 60 F.3d 381, 382-83 (7th Cir.1995) ("Boilerplate allegations of a municipal policy, entirely lacking in any factual support that a [municipal] policy does exist, are insufficient.... The absence of any facts at all to support plaintiff's claim renders the allegations mere legal conclusions of section 1983 liability devoid of any well-pleaded facts."(quoting *Baxter by Baxter,* 26 F.3d at 736)). Indeed, other courts in this District have recognized that "[c]laims based wholly on conclusory allegations of de facto municipal policy constitute one of the most prevalent forms of abuse in § 1983 actions."*Copeland v. Northwestern Memorial Hosp.,* 964 F.Supp. 1225, 1240 (N.D.Ill.1997) (citations omitted).

Count IV of Brown's Complaint also alleges two additional policies: 1) the explicit policy that officers must be "on duty", carry loaded weapons and

enforce the law 24 hours a day; and 2) the custom of a code of silence among the officers regarding police misconduct. This Court has significant misgivings about any *Monell* claim based on the policy of officers being "on duty", armed and enforcing the law 24 hours a day. However, this Court need not decide whether such a claim could ever be viable, since Brown has again only provided a bare boilerplate of a claim. While the Court does not expect extensive factual detail in this type of a pleading, it does require more than a recitation of legal conclusions. Unfortunately, the bald Complaint contains no allegations of a connection between such a policy and a pattern of unconstitutional conduct, nor does it contain allegations that the City had knowledge of such a problem.

Brown's final *Monell* claim is that a policy exists in the form of a code of silence amongst the officers regarding police misconduct. While Brown's Complaint contends that a code of conduct exists and that the City had knowledge of the existence of the policy, Brown has failed to allege any nexus between the policy and Brown's own injury (much less any pattern of unconstitutional conduct). Brown's Complaint does not allege how the "code of silence" could possibly be the proximate cause of the constitutional deprivation Brown suffered as a result of the shooting. Accordingly, all four of Brown's claims of municipal liability against the City included in Count IV cannot survive.

## III. *Conspiracy Claim*

\*4 Count V of Brown's Complaint is a conspiracy claim pursuant to 42 U.S.C. §§ 1983 and 1985. The claim includes allegations of conspiratorial conduct between Weber, some of his fellow officers and the City. In its motion to dismiss, the City argues that whatever the merits of the claim against Weber and the other officers, the City is protected from any such claim by the doctrine of intracorporate immunity. "Intracorporate immunity provides that a corporation only acts through its officers, directors, and agents and is incapable of conspiring with

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 1002484 (N.D.Ill.)
**2001 WL 1002484 (N.D.Ill.)**

those designated to act on its behalf."*McCraven v. City of Chicago,* 109 F.Supp.2d. 935, 946 (N.D.Ill.2000). This being the case, it would be impossible for the City to have conspired with its officers as Brown alleges.

However, Brown argues that the City is exempt from immunity by one of the two exceptions to the intracorporate immunity doctrine. The two recognized exceptions to the intracorporate immunity doctrine are: 1) where "the conspiracy was part of some broader discriminatory pattern ... or that it in any way permeated the ranks of the organization's employees;" or 2) "where corporate employees are shown to have been motivated solely by personal bias."*Hartman v. Board of Trustees of Community College Dist. No. 508,* 4 F.3d 465, 470-71 (7th Cir.1993). This claim does not fall under either exception. The Complaint contains no allegation of discrimination, let alone discrimination that constituted a broad pattern. Furthermore, there is no allegation that the conspiracy permeated the ranks of the employees. The Complaint also has failed to allege that Weber's actions were motivated by personal bias. Rather the Complaint continuously alleges that Weber's actions stemmed from his belief that he had been the victim of a theft. Since neither exception applies to the present facts, the City is protected from Weber's conspiracy claim by the intracorporate immunity doctrine.

IV. *State Law Claims*

In Counts VI through X, Brown asserts numerous claims of battery and negligence under Illinois law. Since Brown has brought claims against the City and one of its employees, the statute of limitations created by the Illinois Tort Immunity Act applies. It states: "No civil action may be commenced in any court against a local entity or any of its employees for an injury unless it is commenced within one year of the date that the injury was received or the cause of action accrued."745 Ill. Comp. Stat. § 10/8-101. Brown claims that the injuries at issue occurred on August 7, 1998. Brown did not file her

Complaint until June 12, 2000. Consequently, Brown's state law claims were not filed within the one-year period provided for by the statute of limitations.

However, Brown argues in her response that her state law claims should be preserved by the doctrine of equitable tolling. Brown asserts that she "will offer evidence that her mental condition after this shooting made it impossible for her to discover essential information bearing on the existence of her claim."(Plt's Resp. at 14) Equitable tolling "permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence [s]he is unable to obtain vital information bearing on the existence of ... [her] claim."*Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 450 (7th Cir.1991) (citations omitted). Furthermore, mental incapacity can "be sufficient to toll the filing period, but only if the plaintiff was 'entirely incapable of bringing legal action' or discovering the vital information for the claim."*Chaney v. City of Chicago,* No. 95 C 1979, 1996 WL 718519, at *4 (N.D.Ill.) (citing *Barnhart v. United States,* 884 F.2d 295, 300 (7th Cir.1989)).

*5 In her Complaint, Brown alleges that as a result of the shooting she has "suffered severe physical, mental, emotional, and psychological injuries."(Compl., ¶ 18) It will undoubtedly be a difficult burden for Brown to maintain a claim that she was "entirely incapable of bringing legal action" for the purposes of a summary judgment motion or trial. This is particularly true since she will have to prove that she was unable to file, at a minimum, a claim against the City and John Doe defendants. Such a claim would require only that she had knowledge that she was shot by a Chicago Police Officer. However, the Court, which must accept the allegations in Brown's Complaint as true, finds that Brown has sufficiently pled mental incapacity to defeat a motion to dismiss. Only through further discovery will it be possible to determine whether the injuries she alleged were of the extreme nature necessary to toll the statute of limitations. It is im-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 1002484 (N.D.Ill.)
**2001 WL 1002484 (N.D.Ill.)**

Page 5

possible to make that determination on the pleadings alone.

### Conclusion

For the reasons set forth above, the City's motion to dismiss Counts IV, V and VIII-X is granted as to Counts IV and V and denied as to Counts VIII-X. Weber's motion to dismiss Counts VI and VII is denied.

N.D.Ill.,2001.
Brown v. City of Chicago
Not Reported in F.Supp.2d, 2001 WL 1002484 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

**DEFENDANT'S EXHIBIT D**



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1027127 (N.D.Ill.)
**2005 WL 1027127 (N.D.Ill.)**

Page 1

**H**
Catchings v. City of Chicago
N.D.Ill.,2005.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern
Division.
Jeffrey CATCHINGS, Plaintiff,
v.
CITY OF CHICAGO, a municipal corporation;
Phillip J. Cline, superintendent of Chicago Police;
Terry G. Hillard; Unknown Officers and Agents of
the Police Department of the City of Chicago; Mi-
chael Sheahan, Cook County Sheriff; and Unknown
Cook County Sheriff's Officers and Agents, De-
fendants.
**No. 04 C 6110.**

April 26, 2005.

Gregory X. Gorman, James A. Stamos, Chicago,
IL, for Plaintiff.
John A. Ouska, John Michael Allegretti, Chicago,
IL, for Defendants.

*MEMORANDUM OPINION AND ORDER*

GETTLEMAN, J.
*1 Plaintiff Jeffrey Catchings filed a fifteen-count
first amended complaint alleging violations of his
rights under the Fourth and Fourteenth Amend-
ments to the U.S. Constitution, pursuant to 42
U.S.C. § 1983, as well as violations of the Illinois
Constitution and state common law. Plaintiff al-
leges that he was repeatedly arrested without prob-
able cause and wrongfully detained by defendants.

Subject matter jurisdiction of the § 1983 claims is
based on 28 U .S.C. § 1331 and § 1343, and juris-
diction over the state law claims is based on supple-
mental jurisdiction pursuant to 28 U.S.C. § 1367.
Defendants Terry G. Hillard ("Hillard"), Phillip J.
Cline ("Cline"), and the City of Chicago ("City")
and defendant Michael Sheahan ("Sheahan") have
moved separately to dismiss plaintiff's complaint on

several grounds, but all defendants argue that
plaintiff has failed to state a § 1983 claim. For the
reasons discussed herein, the defendants' motions to
dismiss are granted as to the § 1983 claims, and the
court declines to exercise supplemental jurisdiction
over the state law claims.

*FACTS*[FN1]

> FN1. For the purposes of a motion to dis-
> miss, the court accepts all well-pleaded al-
> legations as true and draws all reasonable
> inferences in favor of the plaintiff. *Travel
> All Over the World, Inc. v. Kingdom of
> Saudi Arabia,* 73 F.3d 1423, 1428 (7th
> Cir.1996).

As discussed below, the court reaches the merits of
plaintiff's § 1983 claims only, and the following
facts are those relevant to the sufficiency of
plaintiff's § 1983 allegations.

Defendant Cline is superintendent of the Chicago
Police Department ("CPD"), and defendant Hillard
is the former superintendent of the CPD. Defendant
Sheahan is the sheriff of Cook County, Illinois.

On January 25, 2003, plaintiff's brother, Baron
Catchings ("Baron"),[FN2] was arrested by the CPD
on a felony charge of retail theft. At the time of his
arrest, Baron identified himself as plaintiff, and was
booked, fingerprinted, and photographed under
plaintiff's name. Baron entered a guilty plea on
January 31, 2003, and was sentenced to probation
under plaintiff's name. Baron did not comply with
the terms of his probation, and on May 20, 2003, an
order of violation of probation was entered against
plaintiff, and a warrant issued for plaintiff's arrest
(the "Warrant"). Plaintiff was arrested and detained
on six separate occasions between September 20,
2003, and March 8, 2004, five times by the CPD
and once by the Waukegan Police, pursuant to the
Warrant. Subsequent to three of these arrests,

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1027127 (N.D.Ill.)
**2005 WL 1027127 (N.D.Ill.)**

plaintiff was transferred to the Cook County jail, where he was detained between eight and twelve days on each occasion. In total, plaintiff spent approximately 43 days in custody over a six month period due to arrests pursuant to the Warrant.

> FN2. The court notes that plaintiff alternately spells his brother's name "Baron" or "Barron."

Each of the six times plaintiff was arrested he told the arresting officers, officers at the police stations where he was processed, and sheriff deputies at the Cook County jail on the occasions he was held there, that the Warrant had been issued against him in error. On each occasion, the error was ultimately recognized, although it was sometimes more than a week later, and plaintiff was released without charges ever being brought against him. Twice-after his second and fifth arrests-a state court judge amended the Warrant to state that plaintiff should not be arrested pursuant to the Warrant.

**\*2** Plaintiff alleges that Hillard, Cline, and the City were responsible for formulating, implementing, instituting and supervising policies, customs and regulations to ensure that: (1) a person arrested pursuant to an arrest warrant is properly identified; (2) "claims by arrestees that they were not properly identified in the arrest warrant and that the warrant was a case of mistaken identity" are reviewed; and (3) "fingerprints, photographs, and physical descriptions" of both the arrestee and the person described in the arrest warrant are checked and matched to ensure that the right person is detained. Plaintiff alleges that Sheahan was responsible to "formulate and supervise policies, customs and regulations" for the Cook County Sheriff, and to "ensure an individual delivered into his custody actually was the person described in the applicable arrest warrant and that his fingerprints and description matched those of [the] person described in the warrant."Plaintiff also alleges that Sheahan was "ultimately responsible to administer the Cook County jail."

## DISCUSSION

In ruling on a motion to dismiss for failure to state a claim, the court accepts the allegations of the complaint as true and views the facts in the light most favorable to the plaintiff. *Travel All Over the World,* 73 F.3d at 1428. A complaint should not be dismissed for failure to state a claim unless there is no doubt that the plaintiff cannot prove a set of facts that would entitled her to relief based on her claim. *Pressalite Corp. v. Matsushita Electric Corp. of America,* 2003 WL 1811530, at \*2 (N.D.Ill. Apr.4, 2003).

Plaintiff asserts § 1983 claims against all defendants, alleging that each of his arrests, detentions, and incarcerations violated the Fourth and Fourteenth Amendments to the U.S. Constitution. Count I asserts a § 1983 claim against Sheahan and unknown Cook County Sheriff officers and agents (collectively, the "Sheriff Defendants"). Counts IV and VII assert § 1983 claims against all defendants. Counts X [FN3] and XIII assert § 1983 claims against Hillard, Cline, the City (collectively, the "City Defendants"), and unknown officers and agents of the CPD. Plaintiff states that all individual defendants are "sued in their individual, as well as official, capacities," and that they were "acting under the color of state law" at all relevant times. All defendants have moved to dismiss the § 1983 claims against them.

> FN3. The court notes that Count X does not specifically state that it is a § 1983 claim, but it appears that plaintiff is asserting an action under § 1983.

To state a § 1983 claim, a plaintiff must show that the deprivation of his constitutional rights was caused by some official custom or policy of the municipality. *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 690-91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The Seventh Circuit has repeatedly held that to allege municipal liability under § 1983, a plaintiff must allege that: (1) the defendant had an express policy that, when en-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

forced, causes a constitutional deprivation; (2) the defendant had a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) plaintiff's constitutional injury was caused by a person with final policymaking authority. *McCormick v. City of Chicago*, 230 F.3d 319, 323-24 (7th Cir.2000)(citing *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir.1995). The Supreme Court has made clear that there is no heightened pleading standard for § 1983 claims. *Leatherman v. Tarrant County Narcotics Unit,* 507 U.S. 163, 167, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).

I. Hillard, Cline, and Sheahan in their individual capacity

**\*3** Plaintiff asserts liability against Hillard, Cline, and Sheahan in their individual capacity for his unconstitutional arrests and detentions. The Seventh Circuit has repeatedly held that " § 1983 does not allow actions against individuals merely for their supervisory role of others" and that "individual liability under 42 U.S.C. § 1983 can only be based on a finding that the defendant caused the deprivation at issue."*Palmer v. Marion County,* 327 F.3d 588, 594 (7th Cir.2003) (citations omitted). Lawsuits against individuals require personal involvement in the alleged constitutional deprivation to support a viable claim. *Id.* Although direct participation is not necessary, there must at least be a showing that an individual defendant "acquiesced in some demonstrable way in the alleged constitutional violation."*Id.* That is, the supervisor must "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye."*Jones v. City of Chicago,* 856 F.2d 985, 992 (7th Cir.1988).

In the instant case, plaintiff has made no allegations that Hillard, Cline, or Sheahan actually knew that plaintiff had been arrested and held on the Warrant, that the Warrant was based on a mistaken identity, or that they directed or consented to the conduct that caused the constitutional deprivation.

*McMurry v. Sheahan,* 1996 WL 296585 (N.D.Ill. May 31, 1996)(denying motion to dismiss § 1983 claim where the plaintiff alleged that the defendants knew of the deficiencies in the warrant system based in part on previous lawsuits). As currently pled, plaintiff does not allege any personal involvement by Hillard, Cline, or Sheahan. Accordingly, defendants' motions to dismiss the § 1983 claims against Hillard, Cline, and Sheahan in their individual capacity are granted without prejudice.

II. The City and Hillard, Cline, and Sheahan in their official capacity

Plaintiff also alleges liability pursuant to § 1983 against the City, and Hillard, Cline, and Sheahan in their official capacity. A suit against a government officer in his official capacity is actually a suit against the government entity for which the officer works. *Kentucky v. Graham,* 473 U.S. 159, 165-66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). It is well-settled that a municipality may not be held liable under § 1983 on a theory of *respondeat superior.City of Canton, Ohio v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). To state a claim against the City or Hillard, Cline, or Sheahan in their official capacity, plaintiff must allege that he suffered a deprivation of a federally protected right, and that the deprivation resulted from an official policy, custom, or practice. *Perkins v. Lawson,* 312 F.3d 872, 875 (7th Cir.2002). Sheahan argues that plaintiff has not alleged a constitutional deprivation by the Sheriff Defendants because plaintiff does not state a substantive due process claim. The City Defendants concede that plaintiff has alleged a constitutional deprivation. Even assuming that plaintiff has sufficiently pled a violation of his constitutional rights by all defendants, plaintiff fails to allege an official policy, custom, or practice, and thus fails to state a claim under § 1983.

**\*4** As plaintiff himself concedes in his responses to the motions to dismiss, his § 1983 claims all depend on his ability to show that either the City (for

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1027127 (N.D.Ill.)
**2005 WL 1027127 (N.D.Ill.)**

Page 4

the City itself, Hillard, and Cline) or Cook County (for Sheahan) had a policy or custom that caused the alleged violation of his Fourth and Fourteenth Amendment rights. *Harris v. City of Marion, Ind.,* 79 F.3d 56, 58 (7th Cir.1996). Plaintiff, however, does not allege that the City, Hillard, Cline, or Sheahan had an affirmative policy of arresting people without probable cause or of arresting them based on warrants that mistakenly identify the subject of the warrant. Nor does plaintiff allege that any of the defendants had a custom or practice permitting such arrests or detentions, or that the failure to select or implement necessary practices constituted a policy or custom for the purposes of a *Monell§* 1983 claim. *SeeCollins v. City of Harker Heights, Tex.,* 503 U.S. 115, 123-24, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992); *Harris,* 79 F.3d at 58.[FN4]

> FN4. The court notes that although plaintiff cites Judge Conlon's recent opinion in *Perez-Garcia v. Village of Mundelein,* 2005 WL 309554 (N.D.Ill. Feb.7, 2005), in a supplement to his response, that case only highlights the insufficiency of plaintiff's allegations. Judge Conlon denied the sheriff's motion to dismiss a § 1983 claim based on mistaken identity, noting that the complaint contained "specific allegations about [the sheriff's] alleged jail procedures."*Id.* at *4. Here, plaintiff makes no allegations about the arrest, detention, or review procedures, or any other procedures, of the CPD or the Cook County Sheriff. In fact, plaintiff does not even allege that such procedures exist.

Rather than alleging a specific policy or custom, or the absence of a policy, plaintiff's complaint repeatedly refers to various "duties" of defendants, including the "duty to reasonably investigate the arrestee's identity, his claim that there was a mistake in the identity of the person named in the warrant, and to compare the fingerprints, photographs and descriptions of plaintiff to those of the subject of

the arrest warrant, [Baron]," and the "duty to refrain from holding [plaintiff] in custody for an arrest warrant based on mistaken identity, which could have been easily detected upon reasonable investigation."Cursory allegations of general duties, however, cannot stand in the place of an allegation of a municipal policy, custom or practice required to state a *Monell* claim under section § 1983. Further, even if the court read the complaint as alleging a policy or a custom, plaintiff fails to allege any connection between the unspecified policies and the conduct he complains of, such as through actual or implied municipal knowledge of the custom or policy and its consequences on various individuals, which is a required element of a *Monell* claim. *SeeCity of Oklahoma v. Tuttle,* 471 U.S. 808, 823, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Sims v. Mulcahy,* 902 F.2d 524, 543 (7th Cir.1990).

In his briefs, plaintiff attempts to cure the deficiencies of his pleading by recasting the first amended complaint as alleging much more than it does, suggesting new claims, and asking the court to infer essential elements of a *Monell* claim from his factual allegations. For example, plaintiff argues in his response to the Sheriff Defendants' motion that "for purposes of § 1983 [he] is alleging that 'policies, customs, or practices' of Cook County caused his repeated detentions," and that he "is challenging the procedures in place to remedy claims of misidentification and false imprisonment."The complaint, however, contains no such allegations. Similarly, plaintiff argues in his response to the City Defendants' motion that be has asserted claims for a failure to train and a failure to implement certain unspecified policies. Although both are viable theories of liability under § 1983, *seeSims,* 902 F.2d at 543 (failure to implement policy) and *City of Canton,* 489 U.S. at 388 (failure to train), none of these allegations are included in plaintiff's first amended complaint. It is axiomatic that a plaintiff cannot raise a new claim for the first time in his response brief. *See, e.g.,Thomason v. Nachtrieb,* 888 F.2d 1202, 1205 (7th Cir.1989)(a complaint may not be amended by briefs in opposition to the motion to

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                          Page 5
Not Reported in F.Supp.2d, 2005 WL 1027127 (N.D.Ill.)
**2005 WL 1027127 (N.D.Ill.)**

dismiss).

*5 Plaintiff also suggests in his responses that the court should infer a policy, practice or custom. The Seventh Circuit held in *Jackson v. Marion County,* 66 F.3d 151, 152-53 (7th Cir.1995), that an unconstitutional policy may be inferred in the absence of direct evidence "by a showing of bad acts and inviting the court to infer from them that the policymaking level of government was bound to have noticed what was going on," and either condoned or acquiesced in the misconduct. Plaintiff's allegations and arguments, however, are too convoluted and imprecise to permit such an inference. For example, plaintiff asserts that his factual allegations "raise a reasonable inference that the City Defendants have a policy of ignoring, much less checking into, claims of false identification," and that the Sheriff Defendants had a similar "de facto policy." Plaintiff's argument confuses the lack of a policy or a practice of misconduct with an explicit policy. Absent factual allegations to support such a theory, the court cannot infer the improbable notion that either municipal defendant has an explicit policy of ignoring claims of mistaken identity. Further, as discussed above, plaintiff's allegations are not sufficient to suggest that any policy making official for the CPD or the Cook County Sheriff was "bound to have noticed" the mistake in the Warrant or was aware of problems with the warrant system that caused mistakes regarding the identity of subjects of warrants. The court therefore cannot infer a policy based on the allegations as currently pled.FN5

> FN5. Should plaintiff wish to attempt to file a second amended complaint sufficiently alleging such policies, consistent with his obligations under Fed.R.Civ.P. 11, he will be given one last opportunity to do so.

Plaintiff is of course correct that there is no heightened pleading standard in § 1983 actions, and thus, "in alleging the existence of an official policy or custom, a plaintiff need only include a 'short and plain statement' of such official policy or custom."*SeeHoward v. Board of Educ. of Sycamore Community Unit School Dist. No. 427,* 893 F.Supp. 808, 815-16 (N.D.Ill.1995)(citing *Leatherman,* 50 U.S. at 167-68). As currently pled, however, the first amended complaint does not contain even a "short and plain statement" of a policy or custom, as required to state a *Monell*§ 1983 claim. Accordingly, the court grants defendants' motions to dismiss the § 1983 claims against the City and Hillard, Cline, and Sheahan in their official capacity.

Jurisdiction over plaintiff's state law claims is based on supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Because the court finds that plaintiff has failed to state a § 1983 claim against any of the defendants in any capacity and grants plaintiff leave to replead, the court will not reach plaintiff's state law claims unless and until plaintiff sufficiently pleads his federal claims.

### *CONCLUSION*

For the reasons stated above, the court grants the defendants' motions to dismiss the § 1983 claims (Counts I, IV, VII, X, and XIII) without prejudice. Plaintiff is given leave to file a second amended complaint on or before May 23, 2005. Defendants shall respond thereto on or before June 13, 2005. The status report previously set for May 3, 2005, is cancelled and reset to June 16, 2005, at 9:00 a.m.

N.D.Ill.,2005.
Catchings v. City of Chicago
Not Reported in F.Supp.2d, 2005 WL 1027127 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

**<u>DEFENDANT'S EXHIBIT E</u>**



Not Reported in F.Supp.2d                                                          Page 1
Not Reported in F.Supp.2d, 2006 WL 163151 (N.D.Ill.)
**2006 WL 163151 (N.D.Ill.)**

Mumm v. Wetter
N.D.Ill.,2006.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern
Division.
Derek and Stephanie MUMM, Plaintiffs,
v.
Craig WETTER, Donna J. Saunders, Tom Tem-
pleton, Randal Carmean, John R. Myers, and City
of Mendota, Illinois, Defendants.
**No. 05 C 6149.**

Jan. 20, 2006.

George Mueller, Hoffman, Mueller & Creedon,
P.C., Ottawa, IL, for Plaintiffs.
Daniel A. Kirk, Marie Joanna Taraska, Querrey &
Harrow, Ltd., Chicago, IL; Julie M. Koerner, Clif-
ford Gary Kosoff, Nikoleta Lamprinakos,
O'Halloran, Kosoff, Helander & Geitner, P.C.,
Northbrook, IL; Bradford B. Ingram, Heyl, Royster,
Voelker & Allen, Peoria, IL, for Defendants.

*MEMORANDUM OPINION AND ORDER*

ST. EVE, J.
**\*1** Derek and Stephanie Mumm allege that their
landlord, Craig Wetter, and various LaSalle County
and City of Mendota officials violated their civil
rights after the Mumms were evicted because they
failed to pay their rent. The Mumms also allege that
the Defendants inflicted emotional distress, unlaw-
fully evicted them, trespassed against them, unlaw-
fully arrested Derek, and breached an oral tenancy.
The Defendants have moved to dismiss the
Mumms' Complaint for a variety of reasons. The
Court grants in part and denies in part their mo- tions.

I. Factual Background

The Mumms allege that they entered into an oral
month-to-month tenancy agreement with Craig

Wetter to lease an apartment in Mendota, Illinois.
On June 8, 2004, Wetter obtained a default order
for possession because the Mumms owed him
$1040 in rent due and $71 in fees. On July 2, July
30, and September 10, 2004, the Mumms paid Wet-
ter with three personal money orders, totalling
$1,220. Two months later, on October 28, 2004,
Randal Carmean, a deputy in the LaSalle County
Sheriff's Department, forcibly evicted the Mumms
from their apartment at the behest of Donna Saun-
ders, Wetter's building manager.

Carmean instructed the Mumms and their children
to leave the premises immediately. When the
Mumms refused, Carmean sought the assistance of
the Mendota Police Department. Officer John My-
ers and Officer Robert Guerrero (who is not a de-
fendant) came to the Mumms' apartment. Accord-
ing to the Mumms, Myers and Carmean then arres-
ted Derek Mumm for criminal trespass and resisting
arrest because he refused to leave the apartment.

As a result, the Mumms filed a six-count complaint
against Wetter, Saunders, Carmean, Myers, Tom
Templeton (the Sheriff of LaSalle County), and the
City of Mendota. In Count I, the Mumms allege
that Wetter and Saunders breached an oral tenancy
with them. In Count II, they allege that the Defend-
ants intentionally inflicted emotional distress
against them when they evicted them. In Count III,
the Mumms allege that the Defendants unlawfully
entered their apartment and unlawfully evicted
them. In Count IV, the Mumms allege that the De-
fendants trespassed against them. In Count V, the
Mumms allege that Carmean and Myers unlawfully
arrested Derek Mumm. In Count VI, the Mumms
allege that the Defendants deprived them of due
process and of the equal protection of the laws. The
Defendants move to dismiss the Mumms claims
against them.

II. Standard of Review

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 163151 (N.D.Ill.)
**2006 WL 163151 (N.D.Ill.)**

A motion to dismiss tests the sufficiency, not the merits, of a complaint. *Cler v. Ill. Educ. Ass'n,* 423 F.3d 726, 729 (7th Cir.2005). Dismissal of a complaint is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim on which relief can be granted. *Id.* When evaluating a motion to dismiss, a court must accept all allegations as true and construe all reasonable inferences from those facts in favor of the non-moving party. *Stachowski v. Town of Cicero,* 425 F.3d 1075, 1078 (7th Cir.2005).

### III. Wetter's and Saunders' Motion to Dismiss

**\*2** Wetter and Saunders first argue that the Mumms cannot state a claim for a breach of an oral tenancy. The Defendants cite *Vintaloro v. Pappas,* 310 Ill. 115, 118, 141 N.E. 377 (1923) to suggest that a lessor can continue to collect rent due after a breach without reaffirming tenancy. While *Vintaloro* is instructive, the Defendants' reliance on it is premised upon an interpretation of the facts that is favorable to them-a conclusion that the $1220 in payments made by the Mumms was dedicated entirely to paying rent due. That, however, is not the only reasonable inference that the Court can draw from these facts. Here, the Mumms allege that they owed $1111 in rent due on June 8, 2004, when Wetter obtained the default judgment against them. The Mumms further allege that sometime subsequent to this judgment, they entered into a new oral month-to-month tenancy, and that Wetter accepted rent due pursuant to this tenancy. The Mumms paid Wetter $1220, in three money orders. A July 2 money order, for $485, has no subject written upon it. A July 30 money order, for $250, states that it is payment toward rent due. And a September 10 money order, for $485, states that it is for "September Rent." Consistent with these allegations, the Court can reasonably infer that sometime subsequent to June 8, 2004, Wetter agreed not to evict the Mumms if they complied with a payment plan for the outstanding rent and continued to pay future rent due. The Mumms do allege that they reached an agreement with Wetter sometime after

June 8, 2004, that they paid rent pursuant to that agreement, and that even though Wetter accepted rent pursuant to that agreement he later evicted them. That is sufficient to state a claim for a breach of an oral tenancy. The Mumms, however, allege that Saunders acted only as the building manager for Wetter. Therefore, they cannot state a claim for a breach of an oral tenancy against her. Accordingly, Count I is DISMISSED with prejudice as to Saunders. Wetter's Motion to Dismiss Count I is DENIED.

Next Wetter and Saunders argue that the Mumms cannot state a claim for intentional infliction of emotional distress. To state a cause of intentional infliction of emotional distress, a plaintiff must allege, among other things, that the defendant's conduct was "extreme and outrageous" and that the plaintiff actually suffered emotional distress. *Tuite v. Corbitt,* 358 Ill.App.3d 889, 899, 294 Ill.Dec. 367, 830 N.E.2d 779 (2005). Liability attaches only in circumstances where the defendant's conduct is so outrageous and extreme that it goes beyond all possible bounds of decency and does not extend to mere insults, indignities, threats, annoyances, petty oppressions or trivialities. *Id.* "[A] line can be drawn between the slight hurts which are the price of a complex society and the severe mental disturbances inflicted by intentional actions wholly lacking in social utility." *Knierim v. Izzo,* 22 Ill.2d 73, 85, 174 N.E.2d 157 (1961) (threat to murder plaintiff's husband stated claim for intentional infliction of emotional distress); *see also Feltmeier v. Feltmeier,* 207 Ill.2d 263, 278 Ill.Dec. 228, 798 N.E.2d 75 (2003) (pattern of domestic violence sufficient to state claim for emotional distress); *Public Finance Corp. v. Davis,* 66 Ill.2d 85, 4 Ill.Dec. 652, 360 N.E.2d 765 (1976) (creditor's attempt to collect debt did not rise to level necessary to cause severe emotional distress unless accompanied by vulgar language, threats to ruin credit and employment); Being accused of a crime, even one of dishonesty, and the accompanying shame, grief, humiliation, and worry, is not sufficient to state a claim for intentional infliction of emotional distress. *Gianforte*

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

v. *Elgin Riverboat Resort,* No. 02-02-1390, 2003 WL 22208916 (Ill.App.Ct. Sept. 17, 2003). The Mumms emotional distress claim is premised entirely on their allegations that: 1) the Defendants did not inform them that they were to be evicted; and 2) Carmean and Saunders commenced the eviction while the Mumms were sleeping (albeit during the day). An allegedly wrongful eviction (particularly one where the evictors possessed and were acting upon a default judgment against the lessee noting that the lessees "ha[d] to be out by 9:00 A.M." on the date of the eviction), though unpleasant and worrisome, simply is not the type of "extreme and outrageous" conduct necessary to form the basis of an intentional infliction of emotional distress claim. To hold otherwise would transform nearly every alleged mistake made by police officers or county officials into an intentional infliction of emotional distress claim. Count II is DISMISSED with prejudice as to all of the Defendants.

**\*3** Wetter and Saunders next argue that the Court should dismiss the Mumms' claim for unlawful forcible entry and eviction because it is duplicative of their trespass claim and their Section 1983 claim. There is a more fundamental problem, however, with the Mumms' claim. They have based it on the Illinois Forcible Entry and Detainer Act, 735 ILCS 5/9-101*et seq.* The Act provides that "no person shall make entry into lands or tenements except in cases where entry is allowed by law."The Act limits when an action may be taken pursuant to it and what remedies are available under it. 735 ILCS 5/9-102. The purpose of the Act is to settle disputes over the possession of real property. *See Avenaim v. Lubecke,* 347 Ill.App.3d 855, 861, 283 Ill.Dec. 227, 807 N.E.2d 1068 (2004) ("matters not germane to the issue of possession may not be litigated in a forcible entry and detainer action."); *Russell v. Howe,* 293 Ill.App.3d 293, 297, 227 Ill.Dec. 894, 688 N.E.2d 375 (1997). The Mumms do not seek possession of the property-they seek damages for the violation of the Act. The Act, however, does not contemplate a right of action for damages for a ten-

ant who believes that a landlord has violated the Act. Because the Act does not envision such an action, the Mumms have failed to state a claim and Count III is DISMISSED with prejudice as to all of the Defendants.

Wetter and Saunders next argue that the Mumms' claim for trespass must fail. The Defendants argue that individuals can be liable for trespass only if they act with knowledge that their conduct will result in an intrusion. Illinois law contains no such requirement, and trespass can be premised on negligent conduct. *Dial v. City of O'Fallon,* 81 Ill.2d 548, 556-57, 44 Ill.Dec. 248, 411 N.E.2d 217 (1980). A defendant can face liability for trespass, even when operating under a good-faith, but mistaken, belief that the land is his own.*Lyons v. State Farm Fire and Cas. Co.,* 349 Ill.App.3d 404, 410, 285 Ill.Dec. 231, 811 N.E.2d 718 (2004). Further, a landlord's invasion of a tenant's right to possession can form the basis of a trespass claim for which the landlord is liable. *Gronek v. Neuman,* 52 Ill.App.2d 250, 253, 201 N.E.2d 617 (1964). Wetter and Saunders also argue that the Mumms have not alleged facts sufficient to demonstrate that they were entitled to possession. The Mumms have alleged the existence of a valid lease, an allegation that the Court must take as true, and which is sufficient to demonstrate that they were entitled to possession. The Defendants' motion to dismiss Count IV is DENIED.

Finally Wetter and Saunders move to dismiss the Mumms' § 1983 claims against them because they are not state actors. To establish liability under 42 U.S.C. § 1983 a plaintiff must prove that the conduct complained of violated a constitutional right of the plaintiff and that the act was committed by a person acting under color of state law. *Yang v. Hardin,* 37 F.3d 282, 284 (1994). To implicate a private actor under § 1983, a plaintiff must demonstrate that the private actor shared with at least one state official a common, unconstitutional goal such that a conspiracy or understanding existed between the public and private actors to violate the

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 163151 (N.D.Ill.)
**2006 WL 163151 (N.D.Ill.)**

Page 4

plaintiff's constitutional rights and that the private actor was a willful participant in joint activity with the State or its agents. *Stagman v. Ryan,* 176 F.3d 986, 1003 (7th Cir.1999); *Fries v. Helsper,* 146 F.3d 452, 457 (7th Cir.1998). Private actors do not act under the color of the law merely by requesting the assistance of the law, even when they may not have grounds to do so. A conspiracy to violate a plaintiff's constitutional rights must exist.*Proffitt v. Ridgway,* 279 F.3d 503, 508 (7th Cir.2002); *Hughes v. Meyer,* 880 F.2d 967, 972 (7th Cir.1989). The Mumms allege that Wetter and Saunders enlisted the sheriff's aid to enforce an Order of Possession that, allegedly, was unenforceable. As *Proffitt* and *Hughes* make clear, by itself, their request that the sheriff's department enforce the Order of Possession is insufficient to transform them into state actors and Count VI is DISMISSED as to Wetter and Saunders.

### IV. Carmean's and Myers's Motions

*4 Carmean's and Myers's motions can be disposed of quickly. Carmean and Myers argue that the Court should dismiss Counts IV and V (trespass and false arrest) against them because they are entitled to immunity under 745 ILCS 10/2-202.[FN1]The Illinois Tort Immunity Act (TIA) grants police officers immunity for their conduct in law enforcement unless that conduct is willful and wanton. 745 ILCS 10/2-202. Carmean argues (and Myers adopts the same argument) that "the facts recited in the complaint ... imply that Carmean may have acted negligently or mistakenly in enforcing an order of the court for possession, which had become stale."The Mumms' Complaint, however, alleges that both Carmean and Myers "knew or should have known" that enforcement of the stale order of possession was unlawful. It is true that if the Mumms prove only that Carmean and Myers "should have known" that the enforcement of the stale order was unlawful, Carmean and Myers would be entitled to the protections of the TIA. Because the Complaint alleges also that Carmean and Myers "knew" that the enforcement of the order

was unlawful, the Mumms have sufficiently alleged willful conduct at this stage of the litigation. *Cler,* 423 F.3d at 729. Whether the Defendants actually knew that the order had expired is not an issue that is appropriate to resolve on a motion to dismiss. Consequently, Carmean's and Myers's Motions to Dismiss Counts IV and V is DENIED.[FN2]

> FN1. Carmean and Myers also move to dismiss Count III on the same basis. As noted earlier, Counts II and III were dismissed as to all of the Defendants.

> FN2. The Motions of Tom Templeton and the City of Mendota to dismiss Counts IV and V, which are premised on the Illinois Tort Immunity Act, are also DENIED. The City of Mendota points out that the prayer for relief in Count V is on behalf of both Dereck and Stephnaie Mumm and that Stephanie Mumm was never arrested, an argument that Plaintiffs do not contest. Accordingly, claims made on behalf of Stephanie Mumm in Count V are DISMISSED as to all of the Defendants.

### V. Templeton's and the City's Motions

Both Templeton and the City argue that the Court should dismiss the Mumms' § 1983 claim because the Mumms do nothing other than make boilerplate allegations of County and City policy. In order to hold a municipality liable for violating a person's civil rights, a plaintiff must establish that the constitutional injury was caused by: 1) an express municipal policy; 2) a custom or practice that is so settled as to constitute an official policy; or 3) a person with final decisionmaking authority. *McTigue v. City of Chicago,* 60 F.3d 381, 382 (7th Cir.1995) Although there is no heightened pleading standard for § 1983 claims, boilerplate allegations of a municipal policy, entirely lacking in any factual support that a policy does exist, are insufficient. *Id.* at 382-83.Further, *respondeat superior* is not a basis for municipal liability under § 1983. *Monell v. Dept. of Social Serv.,* 463 U.S. 658, 690-91, 98

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

S.Ct. 2018, 2036 (1978). In this case, the Mumms allege only that Carmean and Myers were under the control of Templeton and the City, respectively. The Mumms make no allegation, even a boilerplate allegation, that there was an express municipal policy, a custom or practice, or a person with final decisionmaking authority that caused their alleged deprivations. Nor do the Mumms even respond to Templeton's and the City's arguments. Accordingly, Templeton's and the City's motions to dismiss Count VI are DISMISSED.[FN3]

> FN3. To the extent that the Mumms seek to bring Count VI against Myers and Caremean in their official capacities, those claims are also DISMISSED.

### VI. Motions to Strike

**\*5** The Defendants bring several motions to strike, which the Mumms do not oppose. The Defendants argue that: 1) the Mumms' prayer for punitive damages cannot be joint and several; 2) the Mumms cannot recover punitive damages against the City of Mendota or against any Defendant (Templeton, Carmean, or Myers) in his official capacity. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616 (1981). To the extent that the Mumms pray for joint and several · liability for punitive damages, that prayer is stricken. To the extent that the Mumms pray for punitive damages against a municipality or an official acting in his official capacity, those prayers are stricken. This order shall not be construed to otherwise strike the Mumms' prayer for punitive damages in any count that remains.

IT IS SO ORDERED.

N.D.Ill.,2006.
Mumm v. Wetter
Not Reported in F.Supp.2d, 2006 WL 163151 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

**DEFENDANT'S EXHIBIT F**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHAEL JOHNSON,

    Plaintiff,

    v.

D. FORD #5115, I. BENSON #4437, A.
ANTONIAZZI # 13961, E. HOWARD #2337,
W. MURPHY #6066, H. MOSI #4382, C.
PHILLIPS #6657, and the CITY OF
CHICAGO,

    Defendants.

FILED: MAY 7, 2008

08CV2629        CEM

JUDGE HOLDERMAN

MAGISTRATE JUDGE SCHENKIER

No.

## COMPLAINT AT LAW

NOW COMES the PLAINTIFF, by and through Horwitz, Richardson, & Baker LLC.,

and pursuant to this Complaint at Law, states the following against the above named Defendants,

to wit D. FORD #5115, I. BENSON #4437, A. ANTONIAZZI # 13961, E. HOWARD #2337,

W. MURPHY #6066, H. MOSI #4382, C. PHILLIPS #6657 (hereinafter, the "DEFENDANT

OFFICERS"), and the CITY OF CHICAGO.

### JURISDICTION

1.    The jurisdiction of the court is invoked pursuant to the Civil Rights Act, 42 U.S.C. §

1983; the Judicial Code, 28 U.S.C. §1331 and §1343(a); the Constitution of the United States; and

this Court's supplementary jurisdiction powers.

### PARTIES

2.    PLAINTIFF is a resident of the State of Illinois and of the United States.

3.    The DEFENDANT OFFICERS were at all times relevant hereto employed by and acting

on behalf of the CITY OF CHICAGO.

4.    The CITY OF CHICAGO is a duly incorporated municipal corporation and is the

employer and principal of the DEFENDANT OFFICERS as well as the other officers and/or

employees referred to in this Complaint (as indicated in the *Monell* claim alleged herein).  At all

times material to this complaint, the DEFENDANT OFFICERS were acting under color of state

law, ordinance and/or regulation, statutes, custom and usages of the CITY OF CHICAGO.

## FACTS

5.    On or about November 21, 2006, some or all of the DEFENDANT OFFICERS were

engaged in an unreasonable seizure of the PLAINTIFF.  This conduct violated the Fourth

Amendment to the United States Constitution.

6.    On or about November 21, 2006, PLAINTIFF did not obstruct justice, resist arrest and/or

batter and/or assault any of the DEFENDANT OFFICERS.

7.    The show of force initiated by and/or the failure to intervene in the use of said force by

the DEFENDANT OFFICERS caused an unreasonable seizure to the PLAINTIFF.

8.    The DEFENDANT OFFICERS charged and/or participated in the charging of

PLAINTIFF with criminal activity, and arrested, participated in the arrest and/or failed to prevent

the arrest of the PLAINTIFF notwithstanding the fact that the DEFENDANT OFFICERS failed to

observe and/or learn that PLAINTIFF had committed criminal activity of any sort.  The

DEFENDANT OFFICERS did not have probable cause to believe that criminal activity took

place relative to the PLAINTIFF.

9.    On November 21, 2006, PLAINTIFF had not committed an act contrary to the laws of

the State of Illinois.

10.    As a direct and proximate result of one or more of the aforesaid acts or omissions of the

DEFENDANT OFFICERS, PLAINTIFF was caused to suffer damages.

2

11.     On or about November 21, 2006, the DEFENDANT OFFICERS were on duty at all times relevant to this complaint and were duly appointed police officers for the CITY OF CHICAGO. The DEFENDANT OFFICERS engaged in the conduct complained of, on said date, in the course and scope of employment and while on duty.  This action is being brought with regard to the individual capacity of the DEFENDANT OFFICERS.

12.     Upon information and belief, D. FORD #5115, on November 21, 2006, came into physical contact with PLAINTIFF.

13.     Upon information and belief, I. BENSON #4437, on November 21, 2006, came into physical contact with PLAINTIFF.

14.     Upon information and belief, A. ANTONIAZZI # 13961, on November 21, 2006, came into physical contact with PLAINTIFF.

15.     Upon information and belief, E. HOWARD #2337, on November 21, 2006, came into physical contact with PLAINTIFF.

16.     Upon information and belief, W. MURPHY #6066, on November 21, 2006, came into physical contact with PLAINTIFF.

17.     Upon information and belief, H. MOSI #4382, on November 21, 2006, came into physical contact with PLAINTIFF.

18.     Upon information and belief, C. PHILLIPS #6657, on November 21, 2006, came into physical contact with PLAINTIFF.

## CONSPIRACY

19.     Some or all of the DEFENDANT OFFICERS conspired to cause damage to PLAINTIFF in the following manner:

>       a.   agreeing to falsely arrest and/or falsely institute criminal
>            charges/proceedings against the PLAINTIFF;

    b.   using excessive force and/or failing to intervene in the use
         of excessive force against the PLAINTIFF;

    c.   agreeing not to report each other after witnessing and/or
         using excessive force relative to the PLAINTIFF;

    d.   agreeing not to report each other after falsely arresting
         and/or charging PLAINTIFF; and

    e.   generating false documentation to cover-up for their own
         and each other's misconduct.

20.    In connection with the above conspiracy, the DEFENDANT OFFICERS specifically

engaged in communication on or about November 21, 2006, whereby the DEFENDANT

OFFICERS agreed to facilitate, engage in and support the activity which occurred in connection

with the allegations immediately above. As a result of this conspiracy, the DEFENDANT

OFFICERS by and through their conduct, proximately caused PLAINTIFF to, *inter alia*, suffer

injury, be charged with criminal allegations, incur financial loss, including attorneys' fees, and

suffer emotionally.

## EQUAL PROTECTION

21.    The actions of the DEFENDANT OFFICERS, in engaging in the above referenced cover-

up, which led to the generation of false documentation and criminal charges to be lodged against

PLAINTIFF, demonstrate that the DEFENDANT OFFICERS failed in their duty to enforce the

laws equally and fairly towards the PLAINTIFF, therefore violating the Equal Protection Clause

of the Fourteenth Amendment to the United States Constitution.

22.    With regard to an Equal Protection Claim, PLAINTIFF was a "Class of One." In that

regard, PLAINTIFF was treated with ill will and/or discriminated against with no rational basis.

PLAINTIFF was intentionally treated differently as a result of having a potential claim and

witnessing police misconduct attributable to the DEFENDANT OFFICERS. The DEFENDANT

OFFICERS acted with discriminatory intent by treating PLAINTIFF differently and trying to

cause further injury to PLAINTIFF by generating false evidence against PLAINTIFF. Further,

PLAINTIFF was similarly situated to other individuals involved in incidents with police officers

that were not the victims of police misconduct and/or potential claimants against City of Chicago

Police Officers.

### *MONELL* ALLEGATIONS

23.   It is the custom, practice and/or policy of police officers and/or their supervisors/agents

and/or other employees of the CITY OF CHICAGO to perform the following acts and/or

omissions:

  a.  generate false documentation to cover-up for the misconduct of fellow police
      officers;

  b.  engage in acts of false arrest significant intrusions to the body of innocent
      citizens, excessive force, and/or serious acts of violence;

  c.  fail to properly discipline officers from said police department who have
      committed act(s) of false arrest significant intrusions to the body of innocent
      citizens, excessive force, and/or serious acts of violence;

  d.  fail to properly investigate a complaint of false arrest significant intrusions to the
      body of innocent citizens, excessive force, and/or serious acts of violence
      perpetrated by a CITY OF CHICAGO police officer upon another;

  e.  fail to take proper remedial action against a CITY OF CHICAGO police officer
      once it is determined that an act of false arrest significant intrusions to the body of
      innocent citizens, excessive force, and/or serious acts of violence has been
      committed by said officer upon another;

  f.  allow misconduct to occur in various types and severity such that police officers
      believe that they can engage in false arrest significant intrusions to the body of
      innocent citizens, excessive force, and/or serious acts of violence without
      repercussions and/or significant repercussions;

  g.  fail to provide adequate sanctions/discipline to officers who commit false arrest
      significant intrusions to the body of innocent citizens, excessive force, and/or
      serious acts of violence, such that a permissive atmosphere exists among officers

5

wherein they believe that they will not be disciplined (or significantly disciplined) for engaging in such behavior;

h.  fail to provide adequate sanctions/discipline to officers who falsify police reports, investigations and/or internal investigations, causing said officers to believe that they can manufacture evidence which will cause them to not be disciplined or significantly disciplined for engaging in illegal behavior, *inter alia* false arrest significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence;

i.  fail to provide adequate sanctions/discipline to officers who falsify police reports, investigations and/or internal investigations, causing said officers to believe that they can manufacture evidence which will cause them to not be disciplined or significantly disciplined for engaging in behavior which violates the rules, policies and/or procedures of the CITY OF CHICAGO police department;

j.  fail to properly investigate officers who falsify police reports, investigations and/or internal investigations, causing said officers to believe that they can manufacture evidence which will cause them to not be disciplined or significantly disciplined for engaging in behavior which violates the rules, policies and/or procedures of the CITY OF CHICAGO police department;

k.  fail to take proper remedial measures to prevent and/or correct officers who falsify police reports, investigations and/or internal investigations, causing said officers to believe that they can manufacture evidence which will cause them to not be disciplined or significantly disciplined for engaging in illegal behavior, *inter alia* false arrest significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence;

l.  fail to take proper remedial measures to prevent and/or correct officers who falsify police reports, investigations and/or internal investigations, causing said officers to believe that they can manufacture evidence which will cause them to not be disciplined or significantly disciplined for engaging in behavior which violates the rules, policies and/or procedures of the CITY OF CHICAGO police department;

m.  fail to properly investigate officers who commit acts of false arrest significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence, such that a permissive atmosphere exists among officers wherein they believe that they will not be disciplined (or significantly disciplined) for engaging in misconduct with citizens;

n.  fail to take proper remedial action with officers who commit acts of false arrest significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence, such that a permissive atmosphere exists among officers

wherein they believe that they will not be disciplined (or significantly disciplined) for engaging in misconduct with citizens; and

o.   fail to provide proper training to prevent officers from falsifying police reports, falsely charging innocent citizens, committing acts of false arrest significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence, and violating the rules, policies and procedures of the CITY OF CHICAGO police department.

24.    This practice and/or custom, as alleged above, has gone unchecked and been allowed to exist in the CITY OF CHICAGO for a significant period of time, so much so, that police officers for the CITY OF CHICAGO recognize that they will not be punished for committing said acts and that, in fact, said acts are either permitted or quietly consented to by superior officers of the CITY OF CHICAGO police department in order to permit said conduct to re-occur.

A code of silence exists between officers of the Defendant Municipality.  This code of silence obstructs the legal process (preventing the free flow of honest information with regard to acts of misconduct).  This code of silence contributes to the generation of secrets, in the department, regarding police officer misc

## COUNT I
### §1983 False Arrest

25.    PLAINTIFF re-alleges paragraphs 1 – 24 as though fully set forth herein.

26.    The actions of the DEFENDANT OFFICERS caused the arrest of the PLAINTIFF without probable cause to believe that PLAINTIFF committed criminal activity.  Therefore, the conduct of the DEFENDANT OFFICERS was in violation of the Fourth Amendment to the United States Constitution.

27.    The aforementioned actions of the DEFENDANT OFFICERS were the direct and proximate cause of the Constitutional violations set forth above.

WHEREFORE, PLAINTIFF demands compensatory damages from the DEFENDANT

OFFICERS. PLAINTIFF also demands punitive damages, costs and attorneys' fees against the

DEFENDANT OFFICERS. PLAINTIFF also demands whatever additional relief this Court

deems equitable and just.

## COUNT II
### Malicious Prosecution - State Claim

28.    PLAINTIFF re-alleges paragraphs 1 – 24 as though fully set forth herein.

29.    The DEFENDANT OFFICERS alleged that PLAINTIFF violated the laws of the State of

Illinois. These allegations commenced or continued a criminal proceeding against PLAINTIFF.

30.    The DEFENDANT OFFICERS engaged in this effort without probable cause.

31.    The underlying criminal charges were ultimately resolved in favor of PLAINTIFF.

32.    The underlying criminal charges were resolved in a manner indicative of innocence.

33.    The aforementioned actions were the direct and proximate cause of the violations of

Illinois State Law, as set forth above.

WHEREFORE, PLAINTIFF demands compensatory damages from the DEFENDANT

OFFICERS. PLAINTIFF also demands punitive damages and costs against the DEFENDANT

OFFICERS. PLAINTIFF also demands whatever additional relief this Court deems equitable

and just.

## COUNT III
### § 1983 Conspiracy Claim

34.    PLAINTIFF re-alleges paragraphs 1 – 24 as though fully set forth herein.

35.    The aforementioned actions of the DEFENDANT OFFICERS were the direct and

proximate cause of the violations of the United States Constitution, *inter alia,* the Fourth

Amendment and Fourteenth Amendment.

8

WHEREFORE, PLAINTIFF demands compensatory damages from the DEFENDANT

OFFICERS. PLAINTIFF also demands punitive damages, costs and attorneys' fees against the

DEFENDANT OFFICERS. PLAINTIFF also demands whatever additional relief this Court

deems equitable and just.

## COUNT IV
### § 1983 Equal Protection – Class of One

36.    PLAINTIFF re-alleges paragraphs 1 – 24 as though fully set forth herein.

37.    The actions of THE DEFENDANT OFFICERS violated the Equal Protection clause to

the United States Constitution.

38.    The aforementioned actions of said OFFICERS were the direct and proximate cause of

the constitutional violations set forth above.

WHEREFORE, PLAINTIFF demands compensatory damages from the DEFENDANT

OFFICERS. PLAINTIFF also demands punitive damages, costs and attorneys' fees against the

DEFENDANT OFFICERS. PLAINTIFF also demands whatever additional relief this Court

deems equitable and just.

## COUNT V – *Monell*

39.    PLAINTIFF re-alleges paragraphs 1 – 24 as though fully set forth herein.

40.    As a direct and proximate result of the aforementioned acts and omissions by Defendant

CITY OF CHICAGO there existed a custom, practice, policy, and/or pattern, either implicit or

explicit, of the CITY OF CHICAGO in which officers were not held accountable for their

wrongful and/or illegal acts.

41.    Said custom, practice, policy, and/or pattern of the CITY OF CHICAGO encouraged,

endorsed, created willful ignorance of, or otherwise promoted said wrongful acts of the

OFFICERS.

42.     As a direct and proximate result of said custom, practice, policy, and/or pattern, either implicit or explicit, of the CITY OF CHICAGO, PLAINTIFF was injured in a personal and pecuniary manner.

WHEREFORE, PLAINTIFF demands compensatory damages against the CITY OF CHICAGO, costs and attorneys' fees.  PLAINTIFF also demands whatever additional relief this Court deems equitable and just.

## COUNT VI
## Supplementary Claim for *Respondeat Superior*

43.     PLAINTIFF re-alleges paragraphs 1 – 24 as though fully set forth herein.

44.     The aforesaid acts of the DEFENDANT OFFICERS were in the scope of employment and therefore the Defendant CITY OF CHICAGO, as principal, is liable for the actions of its agent(s) under the doctrine of *respondeat superior*.

WHEREFORE should the DEFENDANT OFFICERS be found liable for any state claims alleged herein, Plaintiff demands judgment against the CITY OF CHICAGO and such other additional relief, as this Court deems equitable and just.

## JURY DEMAND

45.     Plaintiff demands trial by jury.


Respectfully submitted,


s/ Blake Horwitz
Attorney for the Plaintiff
Blake Horwitz

10

**HORWITZ, RICHARDSON & BAKER LLC**
Two First National Plaza
20 S. Clark St. Suite 500
Chicago, Illinois 60603
Ph (312) 676-2100
Fax (312) 372-7076

**<u>DEFENDANT'S EXHIBIT G</u>**

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1458770 (W.D.Wis.)
**2005 WL 1458770 (W.D.Wis.)**

**H**
Parus v. Cator
W.D.Wis.,2005.
Only the Westlaw citation is currently available.
United States District Court,W.D. Wisconsin.
William A. PARUS, Plaintiff,
andALLSTATE INSURANCE COMPANY, Germantown Mutual Insurance Company, Intervening Plaintiffs,
v.
Andrew C. CATOR, Thomas Kroeplin, Dawn Bresnahan, individually and in her official capacity as an employee of the Town of Minocqua Police Department, Town of Minocqua, Wisconsin, Clay Kreitlow, individually and in his capacity as an employee of the Town of Woodruff Police Department, and Town of Woodruff, Wisconsin, Defendants.
No. 05-C-0063-C.

June 17, 2005.

### OPINION AND ORDER

CRABB, J.
*1 A love triangle, a small town and the Driver's Privacy Protection Act, 18 U.S.C. §§ 2721-2725, set the scene for this civil action. Plaintiff William A. Parus contends that defendants Andrew Cator, Thomas Kroeplin, Dawn Bresnahan, the Town of Minocqua, Clay Kreitlow and the Town of Woodruff violated his rights under the Act when they obtained or disclosed information about him to defendant Cator and that, as a consequence, they are liable to him for civil damages, pursuant to 18 U.S.C. § 2724. Federal question jurisdiction exists. 28 U.S.C. § 1331.

The case is before the court on motions filed by defendants Bresnahan, Town of Minocqua and Cator. Defendant Cator's motion requires no discussion; his motion was directed at a part of Count 6 that alleged he had violated the Driver's Privacy Protection Act by using a false statement. Plaintiff has dismissed that claim against Cator. However, defendant Cator filed a counterclaim together with his motion to dismiss, in which he alleges that plaintiff intentionally or negligently inflicted emotional distress upon him. Plaintiff responded to the filing of the counterclaim with a motion to make more definite and certain, which Cator has opposed.

I conclude that plaintiff has alleged facts against defendants Bresnahan and Town of Minocqua that, if true, would permit a reasonable jury to grant him relief. Therefore, I will deny the motion to dismiss. I will grant Parus's motion for a more definite statement of the counterclaim because defendant Cator's counterclaim does not meet the minimum pleading standards of Fed.R.Civ.P. 8.

For the sole purpose of deciding these motions, I accept as true the allegations in the complaint.

### BACKGROUND

Sometime before September 20, 2004, defendant Andrew Cator had a romantic relationship with Julie Erickson. After the relationship came to an end, Erickson began dating plaintiff William Parus. On September 20, 2004, Cator saw a car in Erickson's driveway and wanted to know the owner. At approximately 1:00 pm, defendant Clay Kreitlow, an employee of the Woodruff Police Department, called defendant Dawn Bresnahan, a dispatcher for the Minocqua Police Department, and asked her to "run a plate" on the license number from plaintiff's car. Defendant Bresnahan told defendant Kreitlow plaintiff's name, residential address and type of car as they appeared on the database of the State of Wisconsin Department of Motor Vehicles.

A few minutes later, defendant Kreitlow called again, saying that his earlier call for information had been made on behalf of defendant Cator, who had said he was interested in purchasing the car in Erickson's driveway. Defendant Kreitlow told de-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1458770 (W.D.Wis.)
**2005 WL 1458770 (W.D.Wis.)**

fendant Bresnahan that he believed defendant Cator wanted the information for other reasons and told her that he had given defendant Cator no information except that the car's owner was "a local guy." Defendants Kreitlow and Bresnahan agreed that no one should give the information to defendant Cator. Defendant Kreitlow instructed Bresnahan not to give out information about plaintiff's plate to anyone else who called.

**\*2** About two minutes later, defendant Thomas Kroeplin, defendant Cator's uncle and a conservation officer with the Wisconsin Department of Natural Resources, called defendant Bresnahan and asked her to "run me a plate." Defendant Bresnahan laughed and told defendant Kroeplin the number of plaintiff's license plate before he had a chance to give it to her. She refused twice to give him the information, but after he persisted and assured her that he would not disclose it, she told him that the car belonged to plaintiff. Despite his assurances to defendant Bresnahan, defendant Kroeplin informed defendant Cator that the car in Erickson's driveway was plaintiff's.

Approximately twenty minutes later, Erickson called 911. When defendant Bresnahan answered, Erickson told her that defendant Cator had just been to her home, had kicked out a porch light, threatened plaintiff with bodily harm and warned Erickson that she'd never see their child again. Defendant Bresnahan dispatched a police officer to Erickson's home.

Over the next several months, defendant Cator harassed and threatened plaintiff and Erickson repeatedly. The Minocqua police intervened several times. Plaintiff filed a complaint with this court on February 1, 2005.

OPINION

*Motion to Dismiss*

A court will grant a motion to dismiss only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations" of the complaint. *Cook v. Winfrey,* 141 F.3d 322, 327 (7th Cir.1998) (citing *Hishon v. King & Spalding,* 467 U.S. 69, 73, (1984)). In considering a motion to dismiss, a court must accept as true all well-pleaded factual allegations in the complaint, drawing all reasonable inferences in favor of the plaintiff. *Hishon,* 467 U.S. at 72;*Yeksigian v. Nappi,* 900 F.2d 101, 102 (7th Cir.1990). However, the complaint must set forth factual allegations sufficient to give the defendants fair notice of the allegations against them. *Herdrich v. Pegram,* 154 F.3d 362, 369 (7th Cir.1998).

The Driver's Privacy Protection Act authorizes a civil action against any "person who knowingly obtains, discloses or uses personal information [pertaining to the claimant], from a motor vehicle record, for a purpose not permitted under [18 U.S.C. § 2721]."18 U.S.C. § 2724. As a law enforcement officer, defendant Bresnahan is not liable for disclosing personal information from a motor vehicle record, so long as she does so while carrying out the functions of a law enforcement agency. 18 U.S.C. § 2721(b)(1). It is a question of fact whether she was carrying out the functions of a law enforcement agency when she gave defendant Kroeplin information about plaintiff. For the purpose of deciding the motion to dismiss, I must assume that plaintiff will be able to show that defendant was not carrying out these functions when she talked to defendant Kroeplin.

Defendants Bresnahan and Minocqua have moved to dismiss plaintiff's claim of negligent infliction of emotional distress against defendant Bresnahan (count 8) on the ground that plaintiff did not file a notice of claim as required under Wis. Stat. § 893.80 before a state law claim can be prosecuted against a municipality or employee of a municipality. In response to this motion, plaintiff disavows any attempt to bring a state law claim. Rather, it appears, he is alleging negligent infliction of emotion-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1458770 (W.D.Wis.)
**2005 WL 1458770 (W.D.Wis.)**

al distress as a form of injury resulting from the alleged violation of the Act. Whether plaintiff can obtain damages for this kind of injury is an issue to be determined in the future. Defendants did not raise it in their motion to dismiss. I will deny the motion to dismiss insofar as it relates to plaintiff's failure to state a claim against defendants Bresnahan and Minocqua on which relief may be granted and to plaintiff's failure to file a notice of claim and I will construe count 8 of plaintiff's complaint as not asserting a state law tort claim against defendant Bresnahan or defendants Cator and Kroeplin.

### Motion for a More Definite Statement of Counterclaim

**\*3** Fed.R.Civ.P. 12(e) governs motions for more definite statement.Rule 12(e) provides:

If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading. The motion shall point out the defects complained of and the details desired. If the motion is granted and the order of the court is not obeyed within 10 days after notice of the order or within such other time as the court may fix, the court may strike the pleading to which the motion was directed or make such order as it deems just.

Fed.R.Civ.P. 8(e)(1) requires that "[e]ach averment of a pleading shall be simple, concise, and direct."Moreover, Rule 8(a) provides that a pleading which sets forth a claim for relief "shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief."

Rule 12(e) motions are rarely granted, *Scarbrough v. R-Way Furniture Co.,* 105 F.R.D. 90, 92 (E.D.Wis.1985); indeed, "judges are admonished to exercise their discretion sparingly in ordering more definite statements.... A motion under Rule 12(e) must be denied where the subject complaint is not

so vague or ambiguous as to make it unreasonable to use pretrial devices to fill any possible gaps in detail."*Id.* at 91.It is "universally assumed that ... the motion is proper only when the pleading to which it is addressed is so vague that it cannot be responded to." 5A Charles Alan Wright & Arthur Miller, *Federal Practice and Procedure* § 1377 (1983). The "generally accepted current construction of Rule 12(e) is that the movant's ability to prepare a responsive pleading is to be measured in terms of the minimal duty imposed on him by the federal pleading rules and the possibility that he might be prejudiced by attempting to answer the pleading in its existing form."*Id.*

Rule 12(e) is designed to prevent unintelligibility rather than lack of detail. *See, e.g.,* 2A James W. Moore et al., *Moore's Federal Practice* 12. 18 [1] (2d ed.1992). A motion for a more definite statement should not be used to obtain factual details or as a substitute for discovery. *International Harvester Co. v. General Ins. Co. of America,* 45 F.R.D. 4, 6 (E.D.Wis.1968) (motion for more definite pleading is not substitute for discovery proceedings; improper to use motion to elicit any facts beyond those needed to plead responsively). Nonetheless, Rule 12(e) was intended "as a means of relief where there is vagueness and ambiguity in the sense of indefiniteness of facts as well as in instances where there is vagueness and ambiguity in the sense of lacking in clarity of expression."*Hartman Electrical Mfg. Co. v. Prime Mfg. Co.,* 9 F.R.D. 510, 514 (E.D.Wis., 1949).

Having reviewed defendant Cator's counterclaim, I agree that he has failed to indicate what plaintiff allegedly said or did or when, where, and under what circumstances he might have said or done something that makes him liable to defendant. In defendant Cator's brief in opposition to plaintiff's motion, he refers to the sample complaints in the index of the Federal Rules of Civil Procedure. Cator should have noted that even those minimal complaints allege dates and locations and give a brief description of the incident giving rise to the action.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1458770 (W.D.Wis.)
**2005 WL 1458770 (W.D.Wis.)**

Cator notes correctly that the purpose of Rule 12(e) is to avoid unnecessary delay. He seems unaware of the irony of choosing to make that statement in a six-page brief rather than simply fleshing out the allegations in the counterclaim as plaintiff requested. Accordingly, plaintiff's motion for a more definite statement will be granted.

### ORDER

**\*4** IT IS ORDERED that

1. Defendant Andrew Cator's motion to dismiss that portion of Count 6 that alleges that he violated the Driver's Privacy Protection Act by making a false statement is DENIED as moot;

2. The motion to dismiss filed by defendants Dawn Bresnahan and Town of Minocqua is DENIED; and

3. Plaintiff William A. Parus's motion for a more definite statement is GRANTED with respect to defendant Cator's counterclaim. Defendant Cator may have until June 27, 2005, in which to serve and file a counterclaim that sets out in sufficient detail what plaintiff is alleged to have done or said in violation of defendant Cator's rights. If he fails to do so, the present counterclaim will be dismissed.

W.D.Wis.,2005.
Parus v. Cator
Not Reported in F.Supp.2d, 2005 WL 1458770 (W.D.Wis.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.